**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 19, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

GERARDO LOPEZ-MEDINA,

    Defendant - Appellant.

No. 08-4055

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 1:05-CR-00112-DAK-1)**

---

Bel-Ami Jean de Montreux of Montreux Freres, P.C., Salt Lake City, Utah, for Defendant - Appellant.

Stephen J. Sorenson, Assistant United States Attorney (Brett L. Tolman, United States Attorney with him on the briefs) Salt Lake City, Utah, for Plaintiff - Appellee.

---

Before **HENRY**, Chief Circuit Judge, **HARTZ** and **O'BRIEN**, Circuit Judges.

---

**O'BRIEN**, Circuit Judge.

---

Gerardo Lopez-Medina was convicted by a jury of possession of methamphetamine with intent to distribute and sentenced to 235 months

imprisonment. He contends: (1) his rights under the Confrontation Clause were violated by the admission of certain evidence, absent which there was insufficient evidence to support his conviction; (2) the court erred in ruling he could not question a government witness about the nature of the witness' recent conviction; and (3) the prosecution committed prosecutorial misconduct on multiple occasions. Finding only one harmless error, we affirm.

## I. BACKGROUND

A. Factual History

In 2005, law enforcement agencies became suspicious of illegal drug distribution at a residence in Layton, Utah, a split-level home containing an upstairs and downstairs apartment. As part of their investigation, police officers performed three "trash runs" at the Layton residence.[1] The officers discovered several items associated with drug use or distribution: empty bottles of MSM,[2] plastic baggies of various size (some containing white residue), green Saran wrap, duct tape and a marijuana butt. A crystal shard from one of the baggies field-tested positive for methamphetamine. Subsequent testing revealed some of the baggies had contained methamphetamine and one had contained marijuana.

---

[1] During a "trash run" police officers "retrieve trash that has been placed out by the side of the road by a suspect or target residence" to "look for any evidence of drug use [or] drug distribution." (R. Supp. Vol. I, Doc. 184 at 191.)

[2] MSM refers to methylsufonylmethane and is used as a cutting agent for methamphetamine.

On July 29, 2005, police officers executed a search warrant at the Layton residence. Lopez-Medina was present in the upstairs apartment at the time of the search.[3] Officers located various items in the upstairs apartment indicating drug use or distribution.

On August 4, 2005, Scott Cunningham, a handyman for an apartment complex in Clearfield, Utah, met Lopez-Medina and another Hispanic male at the complex to discuss their interest in renting an apartment. He spoke with Lopez-Medina, whom he recalled as having a "lazy eye." During the conversation, Lopez-Medina told Cunningham he was interested in renting Apartment E and pointed to a green pickup truck saying "that's my green truck over there" or "that's my truck." (R. Supp. Vol. I, Doc. 184 at 76, 79.)

That same day, Officer Aaron Johnson of the Ogden City Police Department met with a confidential informant. The informant told Johnson the police had missed some evidence during the search of the Layton residence. The informant said Lopez-Medina lived there and had "Gera" tattooed on his shoulder.[4] According to the informant, Lopez-Medina was nervous because of the search and was in the process of moving to an apartment complex in Clearfield,

---

[3] Although Lopez-Medina was not named as the lessor on the lease, the landlord/owner of the Layton residence testified at trial that Lopez-Medina lived in the upstairs apartment in July and August 2005.

[4] The transcript reads "J-E-R-G-E-R-A." (R. Supp. Vol. I, Doc. 184 at 35.) The government explains the transcript reflects Johnson beginning to spell "Gera" with a "J" then corrected himself.

Utah. The informant took Johnson to the Clearfield apartment and pointed out a green pickup truck. He said there would be fifteen pounds of methamphetamine in the truck's gas tank.

On August 5, 2005, Officer Johnson obtained a warrant to search the truck. There were approximately sixteen pieces of mail on the front seat, all addressed to the Layton residence. Behind the seat, officers located a package wrapped in brown and yellow tape containing a white crystalline substance which field-tested positive for methamphetamine. Inside the gas tank, the officers discovered a false wall creating two compartments—one held gasoline and the other contained eleven packages similar to the one found in the cab. The officers field-tested one of these packages; it tested positive for methamphetamine. All twelve packages were subsequently tested in a laboratory; all contained methamphetamine.

A crime scene investigator examined the truck and its contents for fingerprints. He found four fingerprints: Lopez-Medina's fingerprint on a cell phone bill found on the front seat; two of Rogelio Lopez-Ahumado's fingerprints just above the driver's side door handle; and a third-party's fingerprint on a bill of sale found in the glove compartment.

The next day officers obtained a search warrant for the Clearfield apartment. As officers assembled to execute the warrant, Lopez-Ahumado left the building. Lopez-Medina and Lopez-Ahumado are half-brothers and bear a strong

resemblance to one another.[5] The officers assumed Lopez-Ahumado knew Lopez-Medina because of their resemblance and began talking to Lopez-Ahumado. They learned he was Lopez-Medina's half-brother, lived in Apartment E, and had a set of keys to the green pickup truck. Officers confirmed the keys fit the truck. In Apartment E, they found a quarter-pound of methamphetamine, wrapped similarly to the drugs found in the truck.

Officers spoke with Cunningham, asking if he could identify the owner of the green pickup truck. Cunningham said it was the two Hispanics who had rented Apartment E and "one of them told me that the green truck was his." (R. Supp. Vol. I, Doc. 184 at 82.) Cunningham was not comfortable identifying the truck's owner in person so an officer showed Cunningham a picture of Lopez-Medina on his cell phone. Cunningham identified Lopez-Medina as the person with whom he had spoken.

B. Procedural History

Lopez-Medina and Lopez-Ahumado were charged with possession with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), and aiding and abetting the same based on the drugs found in the pickup truck (Count I). Lopez-Ahumado was also charged with possession with intent to distribute 50 grams or more of methamphetamine, also in violation

---

[5] One distinguishing characteristic is that Lopez-Medina has a "lazy eye" whereas Lopez-Ahumado does not.

of 21 U.S.C. § 841(a)(1), based on the drugs discovered in the Clearfield apartment (Count II).

Lopez-Ahumado pled guilty to Count I. In a statement submitted to the court in advance of his guilty plea, Lopez-Ahumado stated:

> I stipulate and agree that the following facts accurately describe my conduct. They provide a basis for the Court to accept my guilty plea and for calculating the sentence in my case:
>
> On August 5, 2005, I, Rogelio Lopez-Ahumado, knowingly aided & abetted Gerardo Lopez-Medina in jointly possessing, with intent to distribute, 4.833 kilograms of mixture and substance containing methamphetamine (4.63 kilograms actual methamphetamine) which was located in Lopez-Medina's vehicle parked near 607 South 1000 East, Clearfield, Utah.
>
> On August 5, 2005, I also knowingly possessed, with intent to distribute, 444.4 grams of mixture and substance containing methamphetamine (426.6 grams actual methamphetamine) that was located in my apartment at 607 South 1000 East, Apartment E, Clearfield, Utah.

(R. Vol. I, Doc. 44 at 4.) Lopez-Ahumado admitted to these facts at his change of plea hearing. In his plea agreement, the government agreed to request a downward departure at sentencing if Lopez-Ahumado provided substantial assistance to the government "in the prosecution of others involved in Controlled Substance Offenses." (*Id.* at 5.) Lopez-Ahumado did not assist the government and was sentenced to 262 months imprisonment.[6] Lopez-Medina proceeded to

---

[6] Notably, Lopez-Ahumado's judgment stated only that he pled guilty to Count I; it did not state his plea was based on his admission to aiding and abetting Lopez-Medina in jointly possessing the drugs at issue.

trial.

*1. Pre-Trial Proceedings*

Prior to trial, the government filed a motion in limine informing the court defense counsel had represented to the government that Lopez-Medina's defense would be that the government had already convicted the guilty individual, Lopez-Ahumado, and Lopez-Medina was merely an innocent bystander. The government stated it did not plan to call Lopez-Ahumado as a witness in its case-in-chief due to his refusal to answer questions. The government asked the court to prohibit Lopez-Medina from introducing the fact of Lopez-Ahumado's conviction through other witness' testimony on the grounds it was irrelevant and inadmissible hearsay. The government argued if "the Court allow[ed] [Lopez-Ahumado's] conviction to come in as an exception to the hearsay rule, the government should be allowed under the rule of completeness to put in [Lopez-Ahumado's] factual statement in support of his guilty plea" to prevent the jury from assuming Lopez-Ahumado admitted sole responsibility for the crime. (R. Vol. I, Doc. 109 at 2.)

At the pretrial conference, both parties said they did not intend to call Lopez-Ahumado as a witness. The government repeated its objection to the admission of testimony relating to Lopez-Ahumado's conviction but stated if defense counsel "wants to put in the conviction . . . as long as the government is allowed to give the rest of the story, that he has admitted to aiding and assisting [Lopez-Medina] in distributing meth, we have no problem." (R. Supp. Vol. I,

-7-

Doc. 186 at 16.) The court responded: "I will let [defense counsel bring out Lopez-Ahumado's plea and conviction], but then I'm going to let the government point out that this guy also said . . . that he knowingly aided and abetted [Lopez-Medina]." (*Id.* at 17.) After further discussion, the following exchange took place:

> THE COURT: Let's see how it develops. My preliminary notion is that if the conviction comes in, that the government is probably entitled to introduce the rest of the—the important part of the plea agreement, but let's see how it develops. All right?
>
> . . . .
>
> [DEFENSE COUNSEL]: Are you saying they are entitled to bring the plea agreement where they then will say my client aided and abetted him?
>
> THE COURT: If we spend much time on the co-defendant's conviction, yes.
>
> [DEFENSE COUNSEL]: All right. I understand that.

(*Id.* at 20-21.)

The government filed pre-trial notices of intent to introduce the testimony of Troy Fowers and Terry Kiesz pursuant to Rule 404(b) of the Federal Rules of Evidence. The government anticipated Fowers would testify about his drug deals with Lopez-Medina in 2005, Lopez-Medina's unique methods of concealing methamphetamine (such as in drive shafts and car amplifiers), and Fowers' visits to Lopez-Medina's residence. The government anticipated Kiesz would testify about her drug deals with Lopez-Medina in Summer 2005, the frequency of the

-8-

deals, and the truck Lopez-Medina drove. The government argued the information was relevant, its probative value was not substantially outweighed by unfair prejudice, and it was admissible to prove knowledge and intent. Lopez-Medina argued Fowers and Kiesz's testimony should be excluded because it was improper character evidence. The government subsequently filed a motion in limine pursuant to Rule 609 of the Federal Rules of Evidence to prevent cross-examination of Fowers concerning his criminal convictions over ten years old and his more recent misdemeanor convictions not involving dishonesty or false statements.

At the pretrial conference, the court ruled it would allow Fowers and Kiesz to testify. With respect to Fowers' prior convictions, the court ruled it was "not going to let [defense counsel] get into anything that is more than ten years old." (R. Supp. Vol. I, Doc. 186 at 4.) The court then reviewed Fowers' criminal record, designating the convictions about which he could be questioned.

*2. Testimony Concerning Lopez-Ahumado*

On initial cross-examination of Officer Johnson, defense counsel asked about his encounter with Lopez-Ahumado at the Clearfield apartment:

Q.     And then you placed [Lopez-Ahumado] under arrest . . .?

A.     Yes.

. . . .

Q.     And you charged him?

A.     Yes.

Q.     With possession of the 13 kilos of methamphetamine found in the truck?

A.     Yes.  With the meth found there.

Q.     And that person was convicted in this courtroom?

A.     He pled guilty.

Q.     And he was convicted?

A.     Yes.  Accepted guilt.

Q.     Same thing.  And he's in prison for 22 years?

A.     I don't know exactly.

(R. Supp. Vol. I, Doc. 184 at 26.)

Based on this exchange, the prosecutor advised the court he intended to ask Johnson about the factual basis of Lopez-Ahumado's plea on re-direct.  Defense counsel said "[o]kay" but argued if the factual allocution was admitted, Lopez-Ahumado's entire plea agreement should be admitted so he could point out Lopez-Ahumado had been offered the possibility of a reduction in sentence if he gave substantial assistance to the government.  (R. Supp. Vol. I, Doc. 184 at 41.) The court denied this request.

The government then asked Officer Johnson to read into evidence the factual basis for Lopez-Ahumado's plea as reflected in the transcript of Lopez-Ahumado's change of plea hearing.  Defense counsel again argued if the factual

basis was admitted, the whole agreement should be admitted. The following

exchange occurred:

> THE COURT:     Here's what I'm going to do. And you're not
> going to like this so you make your record. I'm going to let in Pages
> 11 and 12 [the fact allocation] . . . . That doesn't mean the stuff he
> never did can come in and he's not here, unfortunately.
>
> [DEFENSE COUNSEL]: Then, Your Honor, how do I – [be]cause I
> need to cross-examine this witness on the basis of him pleading
> guilty and why and what was the offer, what [were] his expectations.
>
> THE COURT: The guy you need to cross-examine on this is the guy
> who won't testify for anybody, and that's not your fault.
>
> . . . .
>
> [PROSECUTOR]: And I just want to say this was brought up at
> pretrial. It was brought up yesterday. If he opened the door, we
> would be able to drive that truck in. He knew the consequences.
>
> . . . .
>
> [DEFENSE COUNSEL]: I have no problem opening any door in this
> case. And I did that purposely, and I knew exactly what I did.
>
> THE COURT: We did cover this generally in pretrial.
>
> [DEFENSE COUNSEL]: Yes.
>
> THE COURT: That the factual basis could come in. And that doesn't
> leave the door open for everything else to come in.

(*Id.* at 50-52.) The court then allowed Officer Johnson to read into the record the

portion of the transcript of Lopez-Ahumado's change of plea hearing containing

the factual allocution.

On final re-cross-examination, defense counsel asked Officer Johnson a

number of questions about Lopez-Ahumado's plea:

Q.    And somehow voluntarily [Lopez-Ahumado] implicated his
      brother Gerardo in this case?

A.    Not somehow.  He appeared very sad, was crying and
      confessed.

                              . . . .

Q.    You read [Lopez-Ahumado's factual allocution] in the record
      to the jury.  It says, and I'll read it again.  That he plead guilty
      to jointly possessing 4.833 kilograms of a mixture and
      substance containing methamphetamine.  By jointly meaning
      he meant he possessed that with Gerardo?

A.    Yes.

                              . . . .

Q.    He pled guilty and implicated my client for possessing the
      drugs in the car; yes?

A.    Yes.

Q.    And he . . .  also admitted that inside his apartment was
      located 444.4 grams of a mixture of methamphetamine?

A.    Yes.

Q.    He did not implicate my client in that part, did he?

A.    No.

Q.    So he took responsibility for that part as the finding in the
      apartment?

A.    Yes.

Q.    But the big, the 12 kilos, he implicated my client?

-12-

A.    The 12 pounds, yes.

(*Id.* at 58-61.)

*3. Testimony Concerning Confidential Informant*

Officer Johnson testified on direct examination about the search of the green pickup truck. On cross-examination, defense counsel asked: "How did you come to know that that pickup truck was a suspected truck?" (R. Supp. Vol. I, Doc. 185 at 84.) The government requested a sidebar conference and expressed concern about this line of questioning. Defense counsel stated: "I think, Your Honor, he's worried that I am going to bring in the confidential informant information. That's my full intention. I don't care what door we open. If I open up a door, please feel free to drive into it. But I am going to explore the entire case." (*Id.* at 85-86.) The government objected on hearsay grounds but stated if the court allowed Johnson to testify about what the informant told him, it should be allowed to question him concerning other statements made by the informant. Defense counsel assured the court he did not intend to ask what the informant told Johnson. The court ruled: "He can ask [Officer Johnson] if he received information from the informant. He can ask that without asking him what it is." (*Id.* at 87.)

Defense counsel then asked Officer Johnson: "Would you please tell the jury how you became aware that that pickup truck was there and it might have contained contraband?" (*Id.* at 88.) Johnson responded he received this

-13-

information from a confidential informant. Johnson also confirmed the confidential informant told him Lopez-Medina's address in Layton. Defense counsel later asked: "Now, the informant that you mentioned, that's that person who is not here who will not testify in this case that we're talking about; right?" (R. Supp. Vol. I, Doc. 184 at 6.) Counsel also asked: "Now, that informant already had told you that the methamphetamine drugs would be found in the fuel tank, correct?" (*Id.* at 7.)

On redirect, the government elicited testimony from Officer Johnson about when and where he first met with the confidential informant and what the confidential informant told him. The government asked: "And the information that he provided to you appeared to be accurate?" (*Id.* at 35.) Johnson responded: "Absolutely." (*Id.*)

On re-cross, defense counsel asked additional questions about Officer Johnson's knowledge of the informant's past criminal history and whether the officer had worked with the informant in the past. Counsel asked: "And he is the one according to your testimony that told you that this drug belonged to my client?" (*Id.* at 65.) Johnson responded: "Yes." (*Id.*)

   *4. Fowers' Testimony*

Troy Fowers offered the following testimony. He dealt methamphetamine from October 2004 to April or May 2005. In April 2006 he pled guilty to possession of methamphetamine with intent to distribute and agreed to cooperate

with the government as part of a plea agreement. He acknowledged three prior convictions for theft in 1996, 1997, and 2000. After a previous supplier was arrested, Fowers was approached by an individual known as "My Friend" and his nephew. Fowers identified Lopez-Medina as "My Friend" and stated he became Fowers' supplier in January 2005. Fowers obtained drugs from Lopez-Medina on a daily or every-other-day basis, beginning at quantities of a quarter-ounce, a half-ounce and an ounce and increasing over time to one pound and occasionally two pounds. The smaller purchases were packaged in sandwich bags. The larger purchases "were wrapped with a Ziploc bag like a burrito real tight . . . and then either green or purple Saran wrap [was] wrapped around it." (R. Supp. Vol. I, Doc. 187 at 187.) Fowers identified the green Saran wrap found in the "trash runs" in June 2005 as the type of plastic wrap he saw used by Lopez-Medina for larger sales.

According to Fowers, Lopez-Medina would sometimes do drug deals at the Layton residence. Fowers described three visits he made to the residence in Summer 2005. On the second visit, Lopez-Medina sold him a pound of methamphetamine concealed in a "fake bible" containing a metal box. (*Id.* at 200.) Lopez-Medina concealed drugs in other containers including car amplifiers, hand-held vacuum cleaners, and drive lines (or drive shafts) for automobiles. Once Lopez-Medina came to Fowers' mechanic shop carrying a drive line and asked for a hacksaw. Although Fowers did not see Lopez-Medina use the

hacksaw, Lopez-Medina soon gave him a pound of drugs.  On another occasion Lopez-Medina came to Fowers' shop and asked him for a drive line for a truck. Fowers did not have one available but said he would look for one.

During cross-examination, defense counsel asked Fowers about the arrest leading to his methamphetamine conviction.  During a break in cross-examination, the government argued it appeared defense counsel was asking Fowers about the facts and circumstances underlying his conviction and claimed such questioning was inappropriate.  The court agreed: "You're entitled to put on the record he was convicted of X, Y and Z . . . .  You're entitled to ask him . . . whether he expects to get some break on the sentencing . . . .  But I don't think you can get into the facts and circumstances of the underlying conviction . . . ." (*Id.* at 217-18.)  Defense counsel argued he should be able to question Fowers about the length of imprisonment he would have faced absent his cooperation and "to graph [the possible sentence] on the board."  (*Id.* at 219.)  The court ruled: "You can ask him if he expects to get a lot less than he might have gotten, but you can't graph the sentence report and the criminal history category.  You can't do it."  (*Id.* at 220.)  On further cross-examination, Fowers admitted he had not yet been sentenced on the drug conviction and hoped to receive a recommendation for leniency for his cooperation in this and other cases.

On final re-direct, the government asked Fowers about his weight:

Q.    Finally, just to give the jury a little insight about drug use,

-16-

how much do you weigh currently?

A.    About 210 pounds.

Q.    How much did you weigh when you were abusing
      methamphetamine?

A.    About 165.

(R. Supp. Vol. I, Doc. 181 at 21.)

5. *Kiesz's Testimony*

Kiesz testified as part of the government's case-in-chief.  She had two prior convictions for possession of a controlled substance and had used and sold drugs in the past.  She met Lopez-Medina in Spring 2005 and visited his residence every day or two for approximately six months to smoke methamphetamine.  She was not aware of anyone else living at the residence.  She knew Lopez-Medina worked on cars.

During the time Kiesz smoked methamphetamine with Lopez-Medina, he was her sole supplier.  The following exchange took place:

Q.    Obviously [methamphetamine is] expensive.  How did you pay
      for your methamphetamine?

A.    Money; sometimes sex.

Q.    Okay.  How would you get your money?

A.    I would sell it.

Q.    Sell the methamphetamine?

A.    Yes, sir.

Q.   Who did you sell for?

A.   I sold for Gera.

(R. Supp. Vol. I, Doc. 187 at 155-56.)

*6. Lopez-Medina's Testimony*

Lopez-Medina testified.  He was born in Mexico but had lived or resided in the United States for "13, 14 years."  (R. Supp. Vol. I, Doc. 181 at 23.)  His only previous arrest was for a traffic ticket.  He lived at the Layton residence with Lopez-Ahumado and a nephew for approximately eight months beginning in December 2004 or January 2005.  The apartment had two bedrooms.  Lopez-Ahumado and the nephew slept in the bedrooms; Lopez-Medina slept on the living room couch.  Lopez-Ahumado and the nephew traveled frequently, buying and selling cars.  Lopez-Medina began to suspect "they were into something that was not good" because people often visited the apartment looking for them.  (*Id.* at 26.)  Lopez-Ahumado and the nephew were in the process of moving out at the time Lopez-Medina was arrested.

Lopez-Medina denied the items found during the "trash runs" belonged to him.  He was in the habit of picking up all the mail from the postal box at the curb of the Layton residence and placing it in a box inside the house for the other tenants to pick up.  Kiesz spent a lot of time with Lopez-Ahumado and the nephew at the apartment.  Lopez-Medina denied knowing Fowers: "I don't know

whether I've seen him, but he's gone to see [Lopez-Ahumado] so much that I may have seen him." (*Id.* at 28.)

Lopez-Medina testified he had been mistaken for Lopez-Ahumado "[m]any, many times." (*Id.* at 29.) The first time he saw the green pickup truck was when Lopez-Ahumado drove it while moving to the Clearfield apartment and he had never been inside or under the truck. He denied placing drugs inside the fuel tank and, asked if he was a drug dealer, answered, "No, sir. I am a mechanic." (*Id.* at 30.)

On cross-examination, Lopez-Medina acknowledged he had his nickname (Gera) tattooed on his shoulder. He also acknowledged weighing 180 pounds in August 2005 and 203 pounds at the time of trial. This exchange then occurred:

Q. How many years have you been here in the United States?

A. Like 13 or 14 years.

Q. You are illegally here, aren't you?

A. Oh, yes.

Q. Have you been breaking the law for 13 or 14 years?

A. Well, I believe so.

(*Id.* at 31.) Lopez-Medina acknowledged Kiesz came to the Layton residence almost every day when Lopez-Ahumado and the nephew were there.

Q. She used methamphetamine with you every day she was there?

A. No, sir.

-19-

Q. She exchanged sex for the methamphetamine that you gave her?

A. No, sir, not with me. I don't know if it was with my brother.

Q. You gave her methamphetamine?

A. No.

(*Id.* at 32.)

On re-direct Lopez-Medina explained he had gained weight following his arrest because he was incarcerated and was not allowed to exercise.

*7. Closing Arguments*

In closing the prosecutor referred to Lopez-Medina's immigration status: "He's here illegally. Been so for 13 years. He's living the lie." (R. Supp. Vol. I, Doc. 181 at 56.) The prosecution also referred to Kiesz's "sex-for-meth" testimony: "He got to the point where, yeah, I know Terri Kiesz, but I just know her. If she slept with someone for methamphetamine, it was my brother." (*Id.* at 57.) The prosecution also commented on Lopez-Medina's post-arrest weight gain, arguing it occurred "because he's not using methamphetamine anymore." (*Id.* at 58.) Counsel compared it to Fowers' 35-plus pound weight gain since stopping methamphetamine use and stated: "Methamphetamine causes you to lose weight, but not necessarily in a good way." (*Id.*) The prosecutor remarked on the strength of the evidence against Lopez-Medina and argued "the final nail in the

coffin for [Lopez-Medina]" was "his half-brother's admission under oath in court." (*Id.* at 65.)  The prosecutor read from the fact allocation at Lopez-Ahumado's change of plea hearing and stated: "His own half brother fingers him." (*Id.* at 66.)

In his closing argument, defense counsel commented on the informant's absence at trial and spoke of Lopez-Ahumado's fact allocution.  "Why did he implicate his brother?  I didn't get a chance to go there with you.  You saw the evidence, all of you.  Use your common sense.  Read what's there.  People make deals in this business." (*Id.* at 77.)

In rebuttal, the prosecutor stated Lopez-Ahumado's participation "cements" Lopez-Medina's participation.  (*Id.* at 85.)  He explained:

> [A]s Agent Johnson brought to your attention, when he questioned [Lopez-Ahumado], he cried.  And, you know, he implicated his brother.  Again, draw from your own personal experience.  Pointing a finger at his brother implicating him in a crime, it's not an easy thing to do.  It's not surprising that he did cry.  He pled guilty, he was sentenced.  He admitted that he aided and abetted his brother, possessing the meth in his brother's truck.  That evidence is undisputed in this case.

(*Id.* at 85-86.)  He also stated Lopez-Medina "asked Mr. Fowers for [an] aluminum driveline . . . for a truck . . . ." (*Id.* at 92.)

*8.  Verdict and Post-Trial*

The jury returned a verdict of guilty.  Lopez-Medina moved for a new trial under Rule 33 of the Federal Rules of Criminal Procedure.  The court denied the

-21-

motion and sentenced him to 235 months imprisonment.

## II. DISCUSSION

Lopez-Medina contends his rights under the Confrontation Clause were violated when the court admitted the confidential informant's hearsay statements and the factual basis for Lopez-Ahumado's guilty plea. Absent this evidence, he argues, there was insufficient evidence to support his conviction. He also claims his conviction should be reversed because: (1) the court ruled he could not question Fowers about the nature of his recent drug conviction without conducting the balancing test required by Rule 403, and (2) the prosecution committed prosecutorial misconduct when it (a) failed to give notice Kiesz would testify to a "sex-for-meth" exchange; and (b) referred in cross-examination and/or closing argument to the "sex-for-meth" exchange, Lopez-Medina's immigration status, his post-arrest weight gain, and his possession of an aluminum drive line. He also claims cumulative error.

A. Confrontation Clause

*1. Hearsay Statements from Confidential Informant*

Lopez-Medina contends his right to confrontation was violated when the court admitted hearsay statements from a confidential informant on redirect. "Although a district court's evidentiary rulings are reviewed for abuse of discretion, whether admission of . . . evidence violates the Confrontation Clause is reviewed de novo." *United States v. Townley*, 472 F.3d 1267, 1271 (10th Cir.),

-22-

*cert. denied*, 127 S. Ct. 3069 (2007).

The Confrontation Clause of the Sixth Amendment provides "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, the Supreme Court held "[w]here testimonial [hearsay] evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." 541 U.S. 36, 68 (2004). The Court "le[ft] for another day any effort to spell out a comprehensive definition of 'testimonial'" but explained "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a formal trial; and to police interrogations." *Id.*

A confidential informant's statements to a law enforcement officer are clearly testimonial. *Melendez-Diaz v. Massachusetts*, --U.S.--, 129 S. Ct. 2527, 2532 (2009); *see also United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004) (concluding "statements of a confidential informant are testimonial" because "[t]ips provided by confidential informants are knowingly and purposely made to authorities, accuse someone of a crime, and often are used against the accused at trial").

The government does not contend the confidential informant was unavailable for trial and does not assert Lopez-Medina had a prior opportunity for cross-examination. Instead, it argues the hearsay statements were properly

-23-

admitted because Lopez-Medina opened the door by questioning Officer Johnson on cross-examination about the information he received from the informant.[7] The government argues: "It is . . . clear that the defense made a tactical decision to explore fully the information given by the confidential informant to Officer Johnson, presumably to discredit the basis for police suspicion and investigation of Lopez-Medina." (Appellee's Br. at 47.)

We agree with the government that Lopez-Medina opened the door to further questioning of Officer Johnson regarding the information he received from the confidential informant. Where, as here, defense counsel purposefully and explicitly opens the door on a particular (and otherwise inadmissible) line of questioning, such conduct operates as a limited waiver allowing the government to introduce further evidence on that same topic. *See Tanberg v. Sholtis*, 401 F.3d 1151, 1166 (10th Cir. 2005) ("When a party opens the door to a topic, the admission of rebuttal evidence on that topic becomes permissible.").

Prior to *Crawford*, we held there was "no doubt" a defendant could waive his rights under the Confrontation Clause. *See Hawkins v. Hannigan*, 185 F.3d 1146, 1154 (10th Cir. 1999); *see also United States v. Aptt*, 354 F.3d 1269, 1282 (10th Cir. 2004); *Bullock v. Carver*, 297 F.3d 1036, 1057 (10th Cir. 2002). The

---

[7] It does not appear the government offered the confidential informant's statements for the truth of the matter asserted. Instead, the statements appear to have been offered to show why Officer Johnson targeted Lopez-Medina. The government does not argue the statements were not hearsay, however, and thus we will treat them as hearsay.

parties do not argue *Crawford* changed this rule. "[B]ecause there is a presumption against the waiver of constitutional rights, for a waiver to be effective it must be clearly established that there was an intentional relinquishment or abandonment of a known right or privilege." *Hawkins*, 185 F.3d at 1154 (quotations and citation omitted). That standard is satisfied here.

The government requested a sidebar conference after defense counsel asked Officer Johnson how he "[came] to know that that pickup truck was a suspected truck[.]" (R. Supp. Vol. I, Doc. 185 at 84.) Defense counsel explained to the court: "I think, Your Honor, [the government is] worried that I am going to bring in the confidential informant information. That's my full intention. I don't care what door we open. If I open up a door, please feel free to drive into it. But I am going to explore the entire case." (*Id.* at 85-86.) It is clear from this statement that defense counsel intentionally relinquished his (or rather, his client's) confrontation right through his questioning of Johnson. This is not a case of ignorance or inadvertence and we do not decide what rule would apply in that context.

The determination that a particular right has been waived "does not end our inquiry." *Aptt*, 354 F.3d at 1281. The procedures and circumstances required for effective waiver depend on the right at stake. *Id.* Similar to waiver by stipulating to the admission of evidence, counsel in a criminal case may waive a client's Sixth Amendment right of confrontation by opening the door, "so long as the

defendant does not dissent from his attorney's decision and so long as it can be said that the attorney's decision was a legitimate trial tactic or part of a prudent trial strategy." *Id.* at 1282 (quotations omitted); *see also United States v. Dazey*, 403 F.3d 1147, 1169 (10th Cir. 2005) ("Defense counsel's stipulation to admission of evidence effectively waives the defendant's confrontation rights unless the defendant can show that the waiver constituted ineffective assistance of counsel."). Here there is no indication Lopez-Medina dissented from his attorney's decision to open the door. Similarly, there is no indication the decision was not a legitimate trial tactic.[8]

We find a Fifth Circuit case to be instructive. In *United States v. Acosta*, police officers discovered a large quantity of cocaine in a vehicle in which two individuals, Acosta and Marrufo, were traveling. 475 F.3d 677, 679 (5th Cir. 2007). Marrufo pled guilty. He provided a statement articulating the factual basis for his plea and a statement to qualify for a "safety valve" sentence reduction, both implicating Acosta in the crime. The court ordered him to testify at Acosta's trial but he refused to answer several questions concerning Acosta's participation even when asked about his prior statements. On cross-examination, Marrufo answered every question posed to him. Over the government's objection,

---

[8] If counsel's decision to waive his client's confrontation right was made over the client's dissent or was not a legitimate trial tactic, the client might have a viable claim of ineffective assistance of counsel. There is no such claim here and, in any case, such a claim "should be brought in collateral proceedings, not on direct appeal." *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995).

he testified he believed he would receive a more lenient sentence if he implicated Acosta. The trial court found defense counsel's questioning was designed to impeach Marrufo by illustrating a motive to lie. The court allowed the government to admit Marrufo's safety valve statement to show his trial testimony was not a recent fabrication and gave a limiting instruction to that effect. It also allowed the government to recall the police officer who conducted Marrufo's safety valve debriefing to testify to the statements he made.

The Fifth Circuit held the court did not err in admitting Marrufo's written safety valve statement "because it was not admitted to establish the truth of the matter asserted and because Acosta opened the door to its admission." *Id.* at 683. The court explained:

> Acosta invited the error. If a defendant injects otherwise inadmissible evidence, the defense cannot later object to such invited error. In his cross-examination of Marrufo, Acosta made a tactical decision to discredit Marrufo's safety valve statement by presenting it as a concession made to please the government and asserting that Marrufo was being evasive at trial because he feared a perjury conviction. This opened the door for the statement's admission . . . .

*Id.* at 683-84 (quotations omitted). The court also rejected Acosta's argument "that the court violated the Confrontation Clause when it permitted [the officer] to testify about Marrufo's prior statements." *Id.* at 684. The court held "even if this testimony were otherwise inadmissible, Acosta opened the door to its introduction." *Id.*

We agree with the Fifth Circuit's analysis, at least where there is an

-27-

explicit waiver.  The Confrontation Clause is a shield, not a sword.  Here, the court advised defense counsel he could ask Officer Johnson whether he received information from the informant but could not ask what information he received.  Defense counsel proceeded to ask Johnson if the informant told him about the drugs in the pickup truck and gave him Lopez-Medina's address in Layton.  This opened the door to further questioning about the confidential informant's statements to Officer Johnson on redirect.  It was defense counsel, not the government, who first questioned Johnson regarding the specific information he obtained from the informant.  Lopez-Medina cannot now complain Johnson should not have been allowed to answer the government's related questions on redirect.

Lopez-Medina relies on *Cromer*.  On cross-examination, Cromer and his counsel "introduced the existence of an informant and a description provided by that informant in an attempt to discredit the government's case."  389 F.3d at 679.

> Even after Cromer was warned that this line of questioning would open the door to allow the government to question [the officer] about the exact content of the informant's statements, Cromer continued in his attempt to establish that the informant's statement did not describe him.  On redirect examination, the government . . . clarified the precise nature of the description provided by the [informant].

*Id.*  The court held the officer's testimony on redirect violated Cromer's right to confrontation explaining: "As a matter of modern evidence law, the district court may well have been correct in admitting [the officer's] redirect testimony about

the description provided by the informant since Cromer, on cross-examination, had opened the door to the subject by asking about that description." *Id.* at 678.

> The pertinent question, however, is not whether the [informant's] statements were properly admitted pursuant to "the law of Evidence for the time being." *Crawford*, 124 S. Ct. at 1364. Rather, the relevant inquiry is whether Cromer's right to confront the witnesses against him was violated by [the officer's] redirect testimony. If there is one theme that emerges from *Crawford*, it is that the Confrontation Clause confers a powerful and fundamental right that is no longer subsumed by the evidentiary rules governing the admission of hearsay statements. Thus, the mere fact that Cromer may have opened the door to the testimonial, out-of-court statement that violated his confrontation right is not sufficient to erase that violation . . . . A foolish strategic decision . . . will not cause the defendant to forfeit his rights under the Confrontation Clause.

*Id.* at 679.

We disagree with *Cromer* and, as previously stated, believe a defendant can open the door to the admission of evidence otherwise barred by the Confrontation Clause.[9] Other jurisdictions have held, subsequent to *Crawford*, there is no Confrontation Clause violation when the defendant opens the door to the admission of hearsay testimony. *See, e.g.*, *Tinker v. State*, 932 So.2d 168, 187-88 (Ala. Crim. App. 2005)*; State v. Birth*, 158 P.3d 345, 355 (Kan. Ct. App.

---

[9] The government argues *Cromer* is inapposite based on a footnote in *Cromer* where the court stated it "need not devote much attention to the question of whether the Confrontation Clause was violated by any of the evidence admitted during [Cromer's] cross-examination since a party may not complain on appeal of errors that he himself invited or provoked." *Cromer*, 389 F.3d at 678 n.11 (quotations omitted). This footnote, however, only suggests Lopez-Medina cannot complain of Officer Johnson's testimony on cross-examination because he himself elicited it. Like Cromer, Lopez-Medina challenges the statements made by Officer Johnson on redirect by the government. Thus, this footnote does not help the government.

2007), *cert. denied*, 128 S. Ct. 1302 (2008); *People v. Ko*, 789 N.Y.S.2d 43, 45 (N.Y. App. Div. 2005); *State v. Robinson*, 146 S.W.3d 469, 492-93 (Tenn. 2004). As one federal district court has noted: "If the *Cromer* rule were correct, a defendant would be free to mislead a jury by introducing only parts of an out-of-court statement, confident that the remainder of the statement could not be introduced because the Confrontation Clause would provide a shield." *Ko v. Burge*, No. 06 Civ. 6826, 2008 WL 552629, at *13 (S.D.N.Y. Feb. 26, 2008) (Koeltl, J.).[10]

### 2. *Lopez-Ahumado's Factual Allocution*

Lopez-Medina also contends his right to confrontation was violated when the court admitted Lopez-Ahumado's factual allocution. As previously discussed, "[w]here testimonial [hearsay] evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford*, 541 U.S. at 68. Lopez-Ahumado's statements at his change of plea hearing fall within the "core class of testimonial statements." *See Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527, 2531 (2009) (quotations omitted); *see also United States v. Bruno*, 383 F.3d 65, 78 (2d Cir.

---

[10] We further conclude Lopez-Medina's argument is precluded under the invited error doctrine, which "prevents a party from inducing action by a court and later seeking reversal on the ground that the requested action was in error." *United States v. Edward J.*, 224 F.3d 1216, 1222 (10th Cir.2000) (quotations omitted). By purposefully questioning Johnson on what he learned from the informant, Lopez-Medina cannot now complain the admission of that evidence was error.

2004) (holding "there is no question" that a plea allocution is testimonial under

*Crawford*).

Because Lopez-Ahumado's statements at his change of plea hearing were testimonial, they could not be admitted in Lopez-Medina's trial for the truth of the matter asserted unless Lopez-Ahumado was unavailable and Lopez-Medina had a prior opportunity for cross-examination.[11] We need not consider whether Lopez-Ahumado was unavailable because it is clear the second requirement was not met—Lopez-Medina did not have a prior opportunity to cross-examine Lopez-Ahumado.

The government contends Lopez-Medina waived his right to challenge the admission of the plea allocution by questioning Officer Johnson about Lopez-Ahumado's conviction and sentence. The government also argues Lopez-Ahumado's statements were properly admitted pursuant to the rule of completeness "in order to correct a likely misimpression that [Lopez-Ahumado] had already claimed full responsibility for the crime." (Appellee's Br. at 39.) Lopez-Medina argues, for the first time on appeal, that he did not waive his rights under the Confrontation Clause because his questioning of Johnson did not exceed the scope of the district court's ruling at the motion in limine. In the alternative, he argues if the evidence was properly admitted pursuant to the rule of

---

[11] The government does not argue the statements were not admitted for the truth of the matter asserted.

completeness, the court erred in refusing to allow him to introduce the portion of Lopez-Ahumado's plea agreement in which the government offered the possibility of a reduced sentence in exchange for Lopez-Ahumado's substantial assistance. Because we conclude the evidence was properly admitted under the rule of completeness, we need not decide the waiver issue.[12]

The rule of completeness is a common law doctrine partially codified in Rule 106 of the Federal Rules of Evidence. *See Echo Acceptance Corp. v. Household Retail Servs., Inc.*, 267 F.3d 1068, 1089 (10th Cir. 2001). Rule 106 provides: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." While Rule 106 applies only to writings and recorded statements, we have held "the rule of completeness embodied in Rule 106 is '"substantially applicable to oral testimony," as well by virtue of Fed. R. Evid. 611(a), which obligates the court to "make the interrogation and presentation effective for the ascertainment of the truth."'" *United States v. Zamudio*, 141 F.3d 1186, No. 96-2181, 1998 WL 166600, at *5 (10th Cir. Apr. 6, 1998) (unpublished) (quoting *United States v. Mussaleen*, 35 F.3d 692, 696 (2d

---

[12] The rule of completeness does not depend upon an explicit waiver. Rather, its purpose is to prevent a party from intentionally misleading the jury by introducing a written or recorded statement in an inaccurate or unfair manner. *See* Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 1:42 (3d ed. 2007).

Cir. 1994)).[13]

The government contends the court correctly admitted the fact allocution pursuant to the rule of completeness because it clarified that Lopez-Ahumado had admitted to jointly possessing the drugs found in the truck and did not take sole responsibility for the crime. Lopez-Medina does not contend the rule of completeness is not applicable or cannot overcome the right to confrontation. Instead, he argues the court violated the rule of completeness by failing to allow him to introduce the portion of Lopez-Ahumado's plea agreement which reflected the government's offer of a reduced sentence in return for Lopez-Ahumado's substantial assistance. He claims this information was necessary to explain to the jury Lopez-Ahumado's motive for pleading guilty.

"The purpose of Rule 106 is to prevent a party from misleading the jury by allowing into the record relevant portions of a writing or recorded statement which clarify or explain the part already received." *United States v. Moussaoui*, 382 F.3d 453, 481 (4th Cir. 2004) (quotations omitted); *see also Echo Acceptance Corp.*, 267 F.3d at 1089 ("The rule of completeness . . . functions as a defensive shield against potentially misleading evidence proffered by an opposing party."). "The rule of completeness, however, does not necessarily require admission of [an entire statement, writing or recording.] Rather, only those portions which are

---

[13] Unpublished decisions are not binding precedent. 10th Cir. R. 32.1(A). We mention *Zamudio* as we would any other non-precedential source.

'relevant to an issue in the case' and necessary 'to clarify or explain the portion already received' need to be admitted." *Zamudio*, 1998 WL 166600, at *6 (quoting *United States v. Haddad*, 10 F.3d 1252, 1259 (7th Cir. 1993)). "In determining whether a disputed portion of a statement must be admitted [under the rule of completeness], the trial court should consider whether '(1) it explains the admitted evidence, (2) places the admitted evidence in context, (3) avoids misleading the jury, and (4) insures fair and impartial understanding of the evidence.'" *Id.* (quoting *United States v. Li*, 55 F.3d 325, 330 (7th Cir. 1995)).

The fact allocution satisfies this four-part test. It is clear from the record that, as the government predicted, Lopez-Medina tried to pin the crime entirely on Lopez-Ahumado. The government objected to any reference to Lopez-Ahumado's conviction as irrelevant and inadmissible hearsay. Defense counsel stated he wanted the jury to know Lopez-Ahumado was convicted because he wanted the jury to hear the full story. The fact allocution explains the basis for Lopez-Ahumado's guilty plea and places that evidence in context. It avoids misleading the jury into believing Lopez-Ahumado accepted sole responsibility for possessing the drugs found in the truck and ensures that the jury understood Lopez-Ahumado's guilty plea did not relieve Lopez-Medina of potential liability.

Even if the fact allocution would be subject to a hearsay objection, that does not block its use when it is needed to provide context for a statement already admitted. *See* Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence §

1:43 (3d ed. 2007); *see also, e.g., United States v. Bucci*, 525 F.3d 116, 133 (1st Cir. 2008) (the rule of completeness "may be invoked to facilitate the introduction of otherwise inadmissible evidence"); *United States v. Sutton*, 801 F.2d 1346, 1368 (D.C. Cir. 1986) (noting every major rule of exclusion, with the exception of Rule 106, includes the proviso "except as otherwise provided by these rules" and stating "Rule 106 can adequately fulfill its function only by permitting the admission of some otherwise inadmissible evidence when the court finds in fairness that the proffered evidence should be considered contemporaneously"); *but see United States v. Guevera*, 277 F.3d 111, 127 (2d Cir. 2001) (Rule 106 does not make admissible what is otherwise inadmissible), *rev'd on other grounds on rehearing*, 298 F.3d 124 (2d Cir. 2002). Thus, the court did not err in admitting the fact allocation pursuant to the rule of completeness.[14]

---

[14] The *Crawford* Court held the Confrontation Clause is "most naturally read as a reference to the right of confrontation at common law, admitting only those exceptions established at the time of the founding." 541 U.S. at 54. Thus, at least arguably, if the rule of completeness is not a founding-era exception to the confrontation right, the fact the court may have properly admitted Lopez-Ahumado's fact allocation pursuant to this rule does not overcome the potential Confrontation Clause violation. *See Giles v. California*, 128 S. Ct. 2678, 2682 (2008). The Supreme Court has "acknowledged that two forms of testimonial statements were admitted at common law even though they were unconfronted." *Id.* at 2682. These were "declarations made by a speaker who was both on the brink of death and aware that he was dying" and "statements of a witness who was detained or kept away by the means or procurement of the defendant." *Id.* at 2682-83 (quotations omitted). The Court has not identified a common law exception to the confrontation right for unconfronted testimonial statements admitted pursuant to the rule of completeness. Lopez-Medina does not contend the factual allocation should have been excluded for this reason and indeed relies on the rule of completeness to argue he should have been permitted to introduce another portion of Lopez-Ahumado's plea agreement. Thus, we deem this argument waived. *See Krastev v. INS*, 292 F.3d 1268, 1280 (10th Cir.

Lopez-Medina argues if the fact allocution was properly admitted under the rule of completeness, that same rule should have allowed him to introduce the government's promise it would seek a downward variance if Lopez-Ahumado provided substantial assistance in the prosecution of others. The rule of completeness connects with Rule 403 of the Rules of Evidence. *See* Mueller & Kirkpatrick, Federal Evidence § 1:42. Rule 403 authorizes the court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." The district court acted within its discretion in excluding the government's promise under Rule 403 because it does not satisfy the four-part test outlined above.

The fact the government promised to seek a lower sentence in exchange for Lopez-Ahumado's substantial assistance does not explain either the fact of Lopez-Ahumado's plea or the factual basis for his plea. In the statement he submitted to the court in advance of his guilty plea, Lopez-Ahumado admitted to possessing with intent to distribute the methamphetamine found in the pickup truck and the methamphetamine found in the Clearfield apartment. Presumably he pled guilty to one count to avoid proceeding to trial and facing a possible (even likely) conviction on two counts. The fact Lopez-Ahumado did not assist the government suggests the government's promise to seek a downward variance in exchange for such assistance was not the reason he pled guilty. And there is no

2002) ("Issues not raised on appeal are deemed to be waived.").

reason to believe the government's promise altered the facts to which Lopez-Ahumado admitted. Admitting the government's promise would not have ensured a fair and impartial understanding of the evidence which is the purpose of the rule of completeness. Actually, it would have had quite the opposite effect—misleading the jury by suggesting the government's offer motivated Lopez-Ahumado's guilty plea, when, in fact, it did not. *See United States v. Wright*, 826 F.2d 938, 946 (10th Cir. 1987) (rejecting defendant's claim he should have been allowed to introduce parts of diary that "were not demonstrably relevant to the issues" since Rule 106 does not require admission of parts of written statement that are "neither explanatory of the previously introduced portions nor relevant [to those portions]"; "[i]t would be puerile to suggest that if any part of a statement is to be admitted the entire statement must be admitted").

B. Rule 403/Rule 609

Defense counsel asked Fowers during cross-examination about the arrest leading to his methamphetamine conviction. During a break in cross-examination, the government argued it appeared defense counsel was improperly questioning Fowers about the facts and circumstances underlying his conviction. Defense counsel claimed he should be allowed to question Fowers about the sentence he would have faced if he had not agreed to cooperate with the government. The court ruled counsel could not question Fowers concerning the facts and circumstances of the conviction but could ask him whether he expected

to receive a reduced sentence based on his cooperation. Lopez-Medina contends

the court erred in precluding him from questioning Fowers concerning the nature

of his conviction without conducting the balancing test required by Rule 403 of

the Federal Rules of Evidence. "We review the district court's decision to admit

or exclude evidence for an abuse of discretion."[15] *United States v. Howell*, 285

F.3d 1263, 1267 (10th Cir. 2002). "A court abuses its discretion when its

decision is based on an error of law." *Id.*

> Rule 609(a)(1) of the Federal Rules of Evidence provides:
>
> For the purpose of attacking the character for truthfulness of a witness, [ ] evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted . . . .

Rule 403 provides: "Although relevant, evidence may be excluded if its probative

value is substantially outweighed by the danger of unfair prejudice, confusion of

the issues, or misleading the jury, or by considerations of undue delay, waste of

time, or needless presentation of cumulative evidence."

"[O]rdinarily, evidence of a witness's felony conviction shall include

information about the <u>nature</u> of that conviction unless, after Rule 403 balancing,

the probative value of such evidence is outweighed by its prejudicial effect." *See*

---

[15] It is unclear whether Lopez-Medina properly objected to the court's ruling as his only objection was that the court prohibited him from questioning Fowers concerning any benefits he received for his cooperation. If his objection was improper, our review would be for plain error. *See United States v. Teague*, 443 F.3d 1310, 1314 (10th Cir. 2006); Fed. R. Crim. P. 52(b). We need not resolve the issue because we find no error even under the more lenient abuse of discretion standard.

*Howell*, 285 F.3d at 1268-69. A district court must conduct "a Rule 403 balancing before determining to exclude all evidence of [a witness's] prior convictions other than the fact and date of such convictions." *Id.* at 1269. Here, the jury was informed of the nature[16] of Fowers' conviction, *i.e.*, that it was for possession with intent to distribute methamphetamine, which is all that *Howell* requires. *Id.* at 1268-69. To the extent Lopez-Medina claims the court should have allowed him to elicit the specific facts underlying Fowers' conviction, we disagree. "Ordinarily, it is improper for the prosecution to examine into the details of the crime for which the accused was convicted. The cross-examination should be confined to a showing of the essential facts of convictions, the nature of the crimes, and the punishment." *United States v. Wolf*, 561 F.2d 1376, 1381 (10th Cir. 1977). Though the questioning here involved a witness, not the accused, we see no abuse of discretion in the court's decision to prohibit Lopez-Medina from eliciting the specific facts and circumstances underlying Fowers' conviction. *Cf. Howell*, 285 F.3d at 1267 (seeing "no reason why we should interpret Rule 609(a)(1) to permit introduction of evidence of the nature of an accused's prior felony conviction, but not evidence of the nature of a witness's prior felony conviction").

---

[16] The nature of a conviction is distinct from the specific facts and circumstances underlying that conviction. *See Howell*, 285 F.3d at 1268-69 (collecting cases).

C. <u>Prosecutorial Misconduct</u>

Lopez-Medina contends the prosecution committed prosecutorial misconduct when it failed to state in its Rule 404(b) notice that Kiesz would testify concerning a "sex-for-meth" exchange. Lopez-Medina also complains about the prosecutors' reference in cross-examination and/or closing argument to Kiesz's "sex-for-meth" testimony, his immigration status, the cause of his post-arrest weight gain, and his possession of an aluminum drive line. Because Lopez-Medina did not contemporaneously object to any of these alleged errors, our review is for plain error. *See United States v. Sands*, 968 F.2d 1058, 1063 (10th Cir. 1992). "Plain error occurs when there is (i) error, (ii) that is plain, which (iii) affects the defendant's substantial rights, and which (iv) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Ruiz-Terrazas*, 477 F.3d 1196, 1199 (10th Cir.), *cert. denied*, 552 U.S. 850 (2007). "When evaluating allegedly inappropriate remarks of counsel for plain error, we must view the remarks in the context of the entire trial." *United States v. Oberle*, 136 F.3d 1414, 1421 (10th Cir. 1998) (quotations omitted).

*1. Kiesz's Testimony*

Lopez-Medina contends the government committed prosecutorial misconduct in failing to disclose in its Rule 404(b) notice that Kiesz would testify to a "sex-for-meth" exchange and in referring to Kiesz's "sex-for-meth" testimony in its closing argument. The government asserts it was not aware Kiesz

would testify concerning the "sex-for-meth" exchange and therefore did not err in failing to disclose it in its Rule 404(b) notice. Because the testimony was relevant to Lopez-Medina's identity and his knowledge of the drugs, the prosecution did not err in making "very limited use of the information after it was conveyed." (Appellee's Br. at 62.)

Rule 404(b) of the Federal Rules of Evidence provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial . . . of the general nature of any such evidence it intends to introduce at trial.

Here, the government revealed prior to trial it intended to question Kiesz regarding, *inter alia*, her drug dealings with Lopez-Medina in Summer 2005. At trial, it asked Kiesz how she paid for the methamphetamine she received from Lopez-Medina and she answered, "Money; sometimes sex." (R. Supp. Vol. I, Doc. 187 at 155.) The government points out there is nothing in the record to indicate it was aware Kiesz would provide this answer. Lopez-Medina does not contend otherwise.

In *United States v. Kravchuk*, we held the trial court did not err in denying the defendant's motion for a mistrial on the ground the government failed to provide notice one of its witnesses would testify the defendant had threatened to

-41-

kill the witness because "the government did not know about the witness's testimony so as to warn the defendant, and therefore Rule 404(b)'s notice provision cannot apply."  335 F.3d 1147, 1155 (10th Cir. 2003).  This holding is equally applicable here.  The government disclosed the general nature of Kiesz's bad act evidence and cannot be held responsible for failing to disclose certain information about which it had no advance knowledge.  Like in *Kravchuk*, Kiesz's testimony was "spontaneous" and did not trigger the notice requirement of Rule 404(b).  *See id.*

Nor do we find error in the government's brief reference to Kiesz's "sex-for-meth" testimony in its closing argument.  The prosecution referred to the testimony to support its argument that this was not simply a case of mistaken identity.  Kiesz's testimony that Lopez-Medina was her sole supplier of methamphetamine for a period of six months and that she exchanged sex for methamphetamine is clearly relevant to show Lopez-Medina was not a victim of mistaken identity.  Kiesz would be expected to know the identity of someone from whom she received drugs for a period of six months—more so if she was having sex with him.  "The prosecutor is entitled to argue to the jury that it should draw reasonable inferences from the evidence to support the government's theory of the case."  *Dazey*, 403 F.3d at 1170.

2. *Reference to Lopez-Medina's Immigration Status*

On cross-examination, the prosecutor questioned Lopez-Medina about his

immigration status:

> Q.   How many years have you been here in the United States?
>
> A.   Like 13 or 14 years.
>
> Q.   You are illegally here, aren't you?
>
> A.   Oh, yes.
>
> Q.   Have you been breaking the law for 13 or 14 years?
>
> A.   Well, I believe so.

(R. Supp. Vol. I, Doc. 181 at 31.)  In closing, the prosecutor argued: "Now defense counsel tried to show him as a nice person, as a person that was law abiding and never committed crime.  He's here illegally.  Been so for 13 years.  He's living the lie." (R. Supp. Vol. I, Doc. 181 at 56.)  Lopez-Medina contends this constitutes prosecutorial misconduct.  The government argues "Lopez-Medina opened the door for inquiry about his illegal status by testifying about his clean record."  (Appellee's Br. at 62.)  We agree with the government.

Lopez-Medina's immigration status is not relevant to whether he committed the crime of possession with intent to distribute but it does counter his suggestion he was a law-abiding citizen wrongly accused of his half-brother's criminal acts.  Lopez-Medina does not contend the government's statement misrepresented either the facts or the law.  And the jury was admonished: "You are here to decide whether the government has proved beyond a reasonable doubt that the defendant is guilty of the crime charged.  The defendant is not on trial for any act, conduct,

or offense not alleged in the indictment." (R. Supp. Vol. I, Doc. 138 at 36.) We see no error.

### 3. Reference to Lopez-Medina's Weight Gain

Fowers testified to gaining a significant amount of weight since he stopped using methamphetamine. During cross-examination, the government elicited testimony from Lopez-Medina that he had gained 23 pounds since his arrest. In closing argument, the prosecution referred to Lopez-Medina's post-arrest weight gain, arguing it was "because he's not using methamphetamine anymore." (R. Supp. Vol. I, Doc. 181 at 58.) Counsel then compared it to Fowers' weight gain and argued: "Methamphetamine causes you to lose weight, but not necessarily in a good way." (*Id*.) Lopez-Medina contends this was error because it informed the jury he was incarcerated and presented the prosecutors "as behavioral and methamphetamine experts." (Appellant's Br. at 57.) The government contends this was a permissible argument based on the evidence and "tend[ed] to make it more likely than not that Lopez-Medina had used drugs as Kiesz testified." (Appellee's Br. at 63.) While we agree the prosecution's statement corroborated Kiesz's testimony concerning Lopez-Medina's drug use, we do not agree this was a permissible argument based on the evidence.

 "[T]he cardinal rule of closing argument [is] that counsel must confine comments to evidence in the record and to reasonable inferences from that evidence." *Whittenburg v. Werner Enters. Inc.*, 561 F.3d 1122, 1128-29 (10th

Cir. 2009). Here, there was no testimony regarding the connection between the cessation of methamphetamine use and weight gain. Thus, the prosecutor's statements connecting the two were impermissible personal opinion. *See United States v. Jones*, 468 F.3d 704, 708 (10th Cir. 2006) ("A prosecutor may not express his personal opinion . . . ."). However, they do not constitute plain error because they neither affected Lopez-Medina's substantial rights nor seriously affected the fairness, integrity, or public reputation of the proceedings. *See Ruiz-Terrazas*, 477 F.3d at 1199. "We have often held that a stray improper remark in closing is no basis for upsetting a trial and requiring the parties and district court to redo their ordeal." *Whittenburg*, 561 F.3d at 1131. This is especially true where, as here, the jury is advised that arguments of counsel are not evidence. *See id.*

    *4. Reference to Lopez-Medina's Request for an Aluminum Drive Line*

In closing, the prosecutor stated: "Once again, don't forget, the defendant asked Mr. Fowers for [an] aluminum driveline—remember that—for a truck." (R. Supp. Vol. I, Doc. 181 at 92.) Lopez-Medina contends this statement constitutes prosecutorial misconduct because Fowers referred to a drive line, not an aluminum drive line. He does not indicate the significance of the word "aluminum" and thus, we can perceive no possible prejudice. In any case, a minor misstatement of fact in closing argument does not constitute prosecutorial misconduct where the evidence of guilt is otherwise strong. *See Wilson v.*

*Sirmons*, 536 F.3d 1064, 1117 (10th Cir. 2008).

D.  Cumulative Error

"A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless."  *Hooper v. Mullin*, 314 F.3d 1162, 1178 (10th Cir. 2002) (quotations omitted).  Where, as here, a defendant "has failed to establish the existence of multiple non-reversible errors (i.e., harmless errors and plain errors failing to necessitate reversal)[,] . . . he cannot benefit from the cumulative error doctrine."  *United States v. Barrett*, 496 F.3d 1079, 1121 (10th Cir. 2007), *cert. denied*, 128 S.Ct. 1646 (2008).

**AFFIRMED.**