United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 9, 2007**

Charles R. Fulbruge III
Clerk

I n the

# United States Court of Appeals
## for the Fifth Circuit

m 05-51691

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

ROBERT ACOSTA,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas
m 3:04-CR-2698-2

Before SMITH, BENAVIDES, and PRADO,
  Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Robert Acosta claims a violation of his Sixth Amendment right to confront a hostile witness. We affirm.

I.

While conducting routine surveillance at an El Paso truck stop, police officer Jose Lucero observed a car with Chihuahuan license plates pull up to an empty flatbed truck.[1] Juan Marrufo exited the car's passenger seat, and he and the driver of the car unloaded two large bags from the car and handed them to someone inside the truck. The two then re-entered

---

[1] Chihuahua is a state of Mexico. Lucero testified that this was significant because of the high number of drug arrests involving cars with Chihuahuan license plates.

the car and drove to the truck stop's convenience store. Lucero followed and observed Marrufo enter the store, after which the car left the truck stop. Suspecting narcotics smuggling, Lucero requested assistance from border patrol agent Gilbert Almanza, who arrived approximately fifteen minutes later. The two officers observed Marrufo leave the store and enter the cab of the truck to which he had earlier delivered the two bags.

The officers approached the truck and displayed their police credentials. Marrufo was in the driver's seat and consented to a search of the truck, during which Almanza's canine alerted to the presence of narcotics. Marrufo summoned Acosta, who exited the truck's sleeper compartment. A hidden compartment was discovered that contained forty bundles of cocaine weighing just over eighty-six pounds and worth approximately $500,000.

Before Acosta's trial, Marrufo pleaded guilty. In addition to providing a statement articulating the factual basis of his guilty plea, Marrufo made an additional statement to qualify for a "safety valve" sentence reduction: He said he had been employed in June by the trucking company owned by Acosta's brother and had driven for the company without incident until October, when Acosta approached him with the proposition of making additional money by smuggling cocaine. Initially hesitant, Marrufo agreed when Acosta demonstrated the sophistication of the truck's hidden compartment.

After Marrufo agreed to help smuggle cocaine, he was assigned to drive with Acosta to El Paso. At the truck stop they were called, as planned, with instructions for picking up the drugs. Marrufo met the courier, whom he did not know, and helped transfer two large bags of cocaine from the courier's car to Acosta,

who was waiting in the truck's cab. Marrufo purchased a wrench from the convenience store, which Acosta used to open the compartment where the drugs were concealed. The two were arrested shortly thereafter.

Marrufo was called as a government witness at Acosta's trial. Before testifying, he appeared outside the jury's presence and informed the court that, because he feared for the safety of his family, he did not want to testify. Although he did not state the source of his fear, it appeared, and the court inferred, that it was because of threats from Acosta. The court ordered Marrufo to testify, had Acosta confined following that day's proceedings, and had Acosta's communications monitored.

Marrufo testified that he was a team driver with Acosta and that the purpose of their visit to the truck stop was to pick up cocaine. He said Acosta was the only other person in the truck. After answering questions about his own involvement in the offense, he refused to answer several questions about Acosta's direct participation in the crime.[2] Several of these questions referenced Marrufo's safety valve statement and the statement that was the factual basis of his guilty plea.[3] Acosta did not object to the questions.

---

[2] Marrufo refused to answer, *inter alia*, who in the truck received the bags of cocaine from him, whether he discussed the cocaine with Acosta, whether Acosta showed him the hidden compartment, and whether Acosta knew about the plan to pick up the cocaine.

[3] An example is the following: "You stated in that statement that when we got to the tractor, we took the bags with cocaine out of the car, and I handed them to Robert. You said that in your statement, didn't you?"

On cross-examination Marrufo did not refuse to answer any of Acosta's questions. Acosta probed Marrufo's motives in making his prior statements. Acosta elicited testimony, over the government's objection, that Marrufo had believed that he would receive a more lenient sentence if he implicated Acosta. The court found that Acosta's questioning was designed to impeach Marrufo by illustrating a motive to lie. Marrufo was not cross-examined about the portions of his prior statements that implicated Acosta.

The government moved to admit Marrufo's safety valve statement, and the court admitted it with a limiting instruction, finding that Acosta's questioning had opened the door to the evidence. It was admitted to show that Marrufo's trial testimony was not, as Acosta had suggested, a recent fabrication.

Lucero was recalled to testify about statements Marrufo made during his safety valve debriefing. Acosta made his first Sixth Amendment objection at that point, which was overruled because the court found that Acosta had opened the door to the admission of those portions of the statements that bore directly on Marrufo's cross-examination testimony. On the final day of trial, Acosta made an unsuccessful Sixth Amendment objection to the government's initial questioning of Marrufo. He was convicted of conspiring to possess with the intent to distribute, and possession with the intent to distribute, five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841 (a)(1) and (b)(1)(A)(ii).

## II.

The Confrontation Clause of the Sixth Amendment guarantees the right to confront hostile witnesses.[4] We review, for plain error only, any Confrontation Clause issues that were not contemporaneously raised at trial.[5] Confrontation Clause objections that were properly raised at trial are reviewed *de novo*, subject to harmless error analysis.[6]

In *Crawford v. Washington*, 541 U.S. 36 (2004), the Court fundamentally altered the role of the Confrontation Clause. Twenty-four years before *Crawford*, the Court collapsed the Confrontation Clause into the hearsay rules of the Federal Rules of Evidence in *Ohio v. Roberts*, 448 U.S. 56 (1980), holding that statements of unavailable witnesses could be admitted, consistent with the Confrontation Clause, if they were reliable. Reliability was established by showing that a statement either met a "firmly rooted hearsay exception" or bore "particularized guarantees of trustworthiness." *Id.* at 66. In *Crawford* the Court replaced the *Roberts* standard with a bright-line rule: The Confrontation Clause prohibits the admission of an out-of-court testimonial statement unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford*, 541 U.S. at 59.

## III.

Acosta claims three Confrontation Clause violations: the government's questioning of

---

[4] "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI.

[5] *United States v. Holmes*, 406 F.3d 337, 347 (5th Cir.) (citing *United States v. Cartwright*, 6 F.3d 294, 300 (5th Cir. 1993); FED. R. CRIM. P. 52(b)), *cert. denied*, 126 S. Ct. 375 (2005).

[6] *United States v. Jimenez*, 464 F.3d 555, 558 (5th Cir. 2006) (quoting *United States v. Bell*, 367 F.3d 452, 465 (5th Cir. 2004)).

Marrufo, the admission of the safety valve statement, and Lucero's testimony about Marrufo's statements. We address each in turn.

## A.

Acosta asserts that the government's questioning of Marrufo about his prior statements, during which Marrufo refused to answer some of the questions, violates the Confrontation Clause. Acosta did not object when these questions were asked, so we review for plain error.[7] "[T]he plain-error exception to the contemporaneous-objection rule is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *Id.* (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)).

*Crawford* bars the admission of testimonial statements unless the defendant had the opportunity to cross-examine the witness. Though the *Crawford* Court did not define "testimonial,"[8] it listed several examples of statements that are testimonial under any definition: "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and . . . police interrogations." *Crawford*, 541 U.S. at 68. The government's questions to Marrufo referenced two prior statements: the factual basis of his guilty plea and his safety valve statement. Both were used at Marrufo's sentencing proceeding, so both are testimonial under *Crawford*.

The next step of the *Crawford* analysis asks whether Acosta had the opportunity to cross-examine Marrufo about his prior statements. Each party relies largely on a single case, and neither case is directly on point.

The government relies on *In re Brown*, 457 F.3d 392 (5th Cir. 2006), for the proposition that as long as a witness is available for cross-examination *Crawford*'s requirements are satisfied. *Brown*, an eve-of-execution habeas appeal, found, *inter alia*, that *Crawford* does not apply where cross-examination of a witness is available, even if it is limited. *Id.* at 395. Based on this, the government claims that *Crawford*'s requirements are satisfied if a defendant has at least some ability to cross-examine.

For two reasons, this imputes a more sweeping interpretation than *Brown* can bear. First, the Confrontation Clause issue was not squarely before the *Brown* court. The court found three distinct procedural bars to Brown's Confrontation Clause claim, and thus even if there had been a *Crawford* violation the court was barred from considering it.[9] Second, during the trial Brown was permitted to cross-examine the witness on nearly every aspect of her testimony; the sole limitation was on the witness's marital status, which the court found to be only marginally relevant.[10] This is unlike Marrufo's testimony, which goes to the

_____

[7] *United States v. Cartwright*, 6 F.3d 294, 300 (5th Cir. 1993) (citing *United States v. Beaumont*, 972 F.2d 91, 95 (5th Cir. 1992)).

[8] "We leave for another day any effort to spell out a comprehensive definition of 'testimonial.'" *Crawford*, 541 U.S. at 68.

[9] The court found that (1) Brown had raised the argument in his certificate of appealabilty and thus was procedurally barred from raising it in his habeas petition; (2) Brown did not proffer any newly discovered evidence that was not included in his prior claim; and (3) even if his appeal was a proper *Crawford* claim, *Crawford* does not apply retroactively on habeas review. *Brown*, 457 F.3d at 395.

[10] *See Brown v. Dretke*, 419 F.3d 365, 375-76 (5th Cir. 2005), *cert. denied*, 126 S. Ct. 1434 (2006).

heart of the government's case. For these reasons, *Brown* provides little guidance.

Acosta relies on *Douglas v. Alabama*, 380 U.S. 415 (1965), in which a convicted defendant was called to testify at his codefendant's trial. Because he intended to appeal his conviction, the witness did not answer any questions, invoking his Fifth Amendment privilege, even after the judge ordered him to testify. The prosecutor then introduced an alleged confession of the witness by reading the confession and periodically asking the witness, "Did you make that statement?" Each time the witness responded by asserting his Fifth Amendment privilege. After the entire document had been read, the government called three law enforcement officers to testify that the statement had been made by the witness.

In *Douglas* the witness's testimony constituted the only evidence that the defendant had committed the crime, and there was no indication that the witness's "refusal to answer was procured by the petitioner." *Id.* at 420. The Court held that, because the witness refused to answer any questions or to acknowledge making the statement, the defendant had no opportunity to cross-examine the witness about the statement, and thus its admission through the government's questions violated the Confrontation Clause. *Id.* at 419.

The government's questioning of Marrufo can be distinguished from the situation in *Douglas* and does not run afoul of the Confrontation Clause, for four reasons. First, Marrufo admitted making the prior testimonial statements. One of the bases for the holding in *Douglas* was that the witness never admitted making the statement; the defendant could not cross-examine the witness about a statement the witness did not acknowledge as his own.[11] In contrast, Marrufo admitted making both the factual basis of his plea agreement and the safety valve statement. He also testified that his safety valve statement was truthful. Therefore Acosta could cross-examine him effectively.

Second, despite Acosta's accusations to the contrary, Marrufo answered several questions about Acosta's involvement in the offense. Marrufo acknowledged that he was a team driver with Acosta and that Acosta was driving with him in the truck to El Paso to pick up a shipment of narcotics and was the only other person in the truck. These statements alone could implicate Acosta, because Marrufo was seen handing the cocaine to someone in the truck, and given that he testified that Acosta was the only other person in the truck, it could be inferred that Marrufo was handing the bags to Acosta. But even without this inference, because Marrufo testified about Acosta's presence at the time of the offense, he could be cross-examined on this testimony.

Third, Acosta could impeach Marrufo about his motives in making his prior statements or discredit his testimony by attacking his perceptions during the offense. In fact, this is exactly what Acosta did when, on cross-examination, he impeached Marrufo by suggesting that he had lied in his prior statements because he thought that if he implicated Acosta he would receive a more lenient sentence. Acosta could have similarly attacked Marrufo's perception of the events leading up to, and

---

[11] "[E]ffective confrontation of [the witness] was possible only if [the witness] affirmed the statement as his. However, [he] did not do so, but relied on his privilege to refuse to answer." *Douglas*, 380 U.S. at 420.

during, the crime. This is unlike the situation facing the defendant in *Douglas*, who could not ask any questions of the non-responsive witness.

Finally, and perhaps most importantly, *Marrufo answered every question he was asked on cross-examination.* The tactical decision by a defendant to forego cross-examination does not create a constitutional violation.[12] In *Crawford*, 541 U.S. at 59 n.9, the Court held that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements . . . . The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it."

On cross-examination Acosta made a tactical decision to refrain from asking Marrufo about the questions he refused to answer on direct examination and from asking him about his earlier statements implicating Acosta. As we have explained, Acosta could have probed either of these subjects on cross-examination.

These four reasons illustrate the novelty of Acosta's *Crawford* claim. Although we do not speculate as to hypothetical outcomes, if Marrufo had steadfastly refused to answer all questions about Acosta's involvement, had denied making the prior statements, and had refused to answer questions on cross-examination, we might face a *Crawford* problem to which Acosta might be entitled to relief, even under the imposing plain error standard. In fact, if Marrufo had refused to answer a single question on cross-examination the *Crawford* analysis could have been challenging.

---

[12] *See, e.g. Lowery v. Collins*, 996 F.2d 770, 771-72 (5th Cir. 1993).

But Marrufo acknowledged Acosta's presence during the offense and acknowledged making the prior statements. Thus, both of these subjects could be reached on cross-examination. Acosta made a tactical decision to avoid these questions, and Marrufo answered every question he was asked on cross-examination. Thus *Crawford* does not apply.

B.

Next, Acosta objects to the admission of Marrufo's written safety valve statement. He did not raise this objection at trial, so we review for plain error. *Holmes*, 406 F.3d at 347. The admission of this statement, however, survives even *de novo* review, because it was not admitted to establish the truth of the matter asserted and because Acosta opened the door to its admission.

Under *Crawford*, 541 U.S. at 59 n.9, the Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted. The district court found that the safety valve statement showed that Marrufo's trial testimony was not a recent fabrication and demonstrated prior inconsistent statements concerning the questions Marrufo refused to answer. The court admitted the statement with the limiting instruction that it was "not being allowed into evidence to prove whether the contents of the exhibit are true or not true. In other words, it is not being offered to establish the truthfulness of what it says."

Juries are presumed to follow limiting instructions. *United States v. Bieganowski*, 313 F.3d 264, 288 (5th Cir. 2002). Because the statement was not admitted to establish the truth of the matter asserted, it does not contravene *Crawford*.

Even if the statement were not being admit-

ted for purposes other than asserting its truth, its admission would be permissible, because Acosta invited the error. If a defendant injects otherwise inadmissible evidence, "the defense cannot later object to such 'invited error.'"[13] In his cross-examination of Marrufo, Acosta made a tactical decision to discredit Marrufo's safety valve statement by presenting it as a concession made to please the government and asserting that Marrufo was being evasive at trial because he feared a perjury conviction. This opened the door for the statement's admission to rebut the impression that Marrufo's reluctance to testify was based on a fear that his statements at trial contradicted an earlier statement in which he lied to obtain a more lenient sentence.

## C.

Finally, Acosta claims that the court violated the Confrontation Clause when it permitted Lucero to testify about Marruo's prior statements. This is the only issue to which Acosta properly raised a *Crawford* objection at trial, and thus we review *de novo*.

Lucero referenced statements Marrufo made during his safety valve debriefing. These statements were made during a police interrogation, so they are testimonial. *Crawford*, 541 U.S. at 53, 68. Lucero's testimony does not contravene *Crawford*, because Marrufo was available for cross-examination, for three reasons. First, he admitted having made the statement to Lucero. Second, Lucero's testimony was limited to those topics about which Marrufo had already testified. Third, even if this testimony were otherwise inadmissible, Acosta opened the door to its introduction.

Marrufo admitted making the statement to Lucero. It was materially different for the witness in *Douglas*, who did not acknowledge making the statement attributed to him. Because Marrufo acknowledged the statement as his, Acosta could have cross-examined him about it. *See supra* Part III.A.

Lucero's testimony was limited to topics Marrufo had testified about earlier in the trial. Marrufo denied stating that he had conspired with Acosta to conceal and deliver the cocaine or that Acosta was involved in the offense. When Lucero was called for redirect and Acosta objected, the court limited the questioning "to those issues that [the government] specifically addressed Marrufo on." The government followed these instructions and asked Lucero only about the prior statements of Marrufo that contradicted his earlier denial that he admitted Acosta was involved.[14]

[13] *United States v. Green*, 272 F.3d 748, 754 (5th Cir. 2001) (quoting *United States v. Raymer*, 876 F.2d 383, 388 (5th Cir.1989)).

[14] The government's short questioning of Lucero on redirect, in its entirety, follows:

Q: Agent Lucero, did Mr. Marrufo indicate to you how he became aware that there was a hidden compartment located in the tractor that we previously discussed?

A: Yes, sir.

Q: How was that?

A: He was made aware by Mr. Robert Acosta.

Q: Did Mr. Marrufo indicate to you who had loaded the compartment?

A: Yes, sir.

Q: And what did he indicate to you?

A: He told me that Robert Acosta had loaded
(continued...)

Because Lucero testified only about topics already covered by Marrufo, Acosta could have cross-examined Marrufo on these subjects.

Finally, Acosta opened the door. During his cross-examination of Marrufo, Acosta impeached Marrufo's credibility by showing that Marrufo stood to gain from implicating Acosta. Acosta thus implied that Marrufo's reluctance to testify was driven by a fear of perjuring himself or contradicting his earlier statements to police. This opened the door for the government to introduce evidence showing that Marrufo's trial testimony was not a recent fabrication. Even if the questions to Lucero were not otherwise admissible, they could be admitted to rebut Acosta's insinuations.

AFFIRMED.

---

[14](...continued)
the compartment.

Q: Did Mr. Marrufo indicate anything to you regarding whether or not gloves could be used to handle narcotics to avoid fingerprints?

A: Yes, sir, he did.

Q: And what did he tell you?

A: He told me that they were going to use gloves to handle the bundles.

Q: Did Mr. Marrufo indicate anything to you regarding whether he and Mr. AcostaSSand this particular statement I am talking about before the events that occurred on November 10 of 2004SSof whether they thought they would get caught if they engaged in this venture?

A: Mr. Marrufo stated that based on how well the hidden compartmentSShow well it was hidden, that they wouldn't be caught.