**UNITED STATES of America,**
**Plaintiff–Appellee**

v.

**Kristi KING; Joe Whittle, Defendants–**
**Appellants.**

**No. 10–60401.**

United States Court of Appeals,
Fifth Circuit.

May 11, 2011.

Scott F. Leary, Esq., U.S. Attorney's Office, Oxford, MS, for Plaintiff–Appellee.

Bobby Taylor Vance, Esq., Vance Law Office, Batesville, MS, David G. Hill, Esq., Hill & Minyard, P.A., Oxford, MS, for Defendants–Appellants.

Before WIENER, BENAVIDES, and STEWART, Circuit Judges.

PER CURIAM: *

Defendants–Appellants Kristi King and Joe Whittle were convicted of conspiracy to possess with intent to distribute methamphetamine in excess of 50 grams pursuant to 21 U.S.C. § 846. King contends on appeal that the evidence was insufficient to support her conviction and that she was not provided a constitutionally fair trial. Whittle contends on appeal that he was unconstitutionally restricted in cross-examining a witness and that the government

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

committed a *Brady* violation. We affirm King's and Whittle's convictions.

## I. Facts and Proceedings

This case concerns a large methamphetamine ("meth") conspiracy in Northern Mississippi. William Page and Steve Ellis, two co-conspirators who are not parties in this case, transported the Mexican-produced meth from Arizona to Mississippi and delivered it to J.W. Myers and Freddy Majure, two more co-conspirators who are not parties in this case. Myers and Majure further distributed the meth in that area.

As part of the larger investigation of this conspiracy, federal agents ran a pen register on Majure's phone which led to the discovery that, between October 2007 and January 2008, Majure spoke with Whittle thirteen times and with King ten times. This discovery, among others, led the agents to track King and Whittle more closely.

In October 2008, Agent Kevin Gregory interviewed King and elicited a confession from her. Agent Gregory testified that King signed a *Miranda* waiver, but that the interview was not recorded. He further testified that he took notes during the interview and reviewed those notes with King before the interview ended. According to Agent Gregory, King confessed that she began purchasing meth from Majure in 2002, eventually working her way up to purchasing two ounces at a time. King told Agent Gregory that she would often

receive meth from Majure on credit, and would then pay for it with the proceeds from her downstream sales. King recited a list to Agent Gregory of specific persons to whom she would sell meth, and stated that, on occasion, she would supply meth to Majure as well. She said that she eventually stopped exchanging drugs with Majure and last contacted him in 2008. King did not testify to these facts at trial, but Agent Gregory took the stand and supplied this information.

In January 2009, Agent Gregory interviewed Majure. At trial, Agent Gregory confirmed that the interview had occurred and that he had taken notes from it, but that the interview was not taped or recorded in any way. Subsequent to this interview, Agent Gregory created a report[1] which stated, relevant to this appeal, that "JOE WHITTLE had purchased ½ ounce quantities of methamphetamine from MAJURE a couple of times."

Majure also took the stand and confirmed much of Agent Gregory's report of King's confession. Majure stated that he sold meth to King from 2003 or 2004 until 2007, and that he received meth from King numerous times. Majure testified to the fact that he knew King was "in the meth business" and that she was dealing drugs. Numerous other witnesses testified at trial that they had seen King possess and distribute large amounts of meth.

Majure also testified that on four occasions he had supplied meth to Whittle[2] in one-half-ounce quantities. Counsel for

---

1. Much of Whittle's brief is devoted to his effort to convince us that the report was not created by Agent Gregory, but rather by some unknown DEA agent. We conclude that the record is clear that the report was created by Agent Gregory. The report labels Agent Gregory as the interviewer, and he refers to "his" notes from the interview. Agent Gregory testified that the reports of "other interviews" with Majure were handled by the

DEA, clearly indicating that the report of his January 2009 interview was not handled by the DEA. Whittle's attempt to suggest otherwise relies on a clever use of ellipses, but ultimately to no avail.

2. Because Whittle does not challenge the sufficiency of the evidence for his conviction, we will not lay out his role in the conspiracy.

Whittle cross-examined Majure in an effort to force him to give a hard answer on how many times he had sold to Whittle. After first exhibiting some uncertainty, Majure stated that he sold to Whittle "[a]pproximately four times." Whittle's counsel did not confront Majure with the report produced by Agent Gregory, which counsel contends contains an inconsistent statement.

The indictment in the instant case listed seven co-conspirators, four of whom pleaded guilty. King and Whittle, as well as Timmy Rhodes, another co-conspirator, went to trial. A jury convicted all three of conspiracy to possess with intent to distribute in excess of 50 grams of meth in violation of 21 U.S.C. § 846. Rhodes did not appeal his conviction or sentence, but King and Whittle timely appealed.

## II. Analysis

### A. Sufficiency of the Evidence for King's Conviction

#### 1. Standard of Review

We review a challenge to the sufficiency of the evidence for a criminal conviction *de novo*, viewing all evidence and making all reasonable inferences in the light most favorable to the verdict.[3]

#### 2. Applicable Law

To convict for a drug conspiracy under 21 U.S.C. § 846, the government must prove (1) the existence of an agreement between two or more persons to violate federal narcotics laws, (2) the defendant's knowledge of the agreement, and (3) his voluntary participation in the agreement.[4] King's appeal concerns the sufficiency of the evidence to show that there was a conspiratorial agreement between her and the larger conspiracy to distribute meth in Northern Mississippi.

Although to prove the existence of an agreement, the government may not merely pile inference on inference or merely show that King associated with conspirators,[5] the existence of an agreement may be established exclusively by circumstantial evidence.[6] The defendant need not have joined the conspiracy at its inception, nor need he have participated in all aspects of the conspiracy,[7] so long as he agreed to the "essential nature of the plan."[8] The agreement need not be express, and one may be inferred if "the working relationship between the parties [ ] has never been articulated but nevertheless amounts to a joint criminal enterprise."[9]

A buyer/seller relationship is not sufficient, on its own, to constitute a conspiratorial agreement; the conspirators must agree to commit some action in furtherance of another crime.[10] And, a buyer/seller relationship may be evidence that the defendant intended to join a conspiracy.[11]

---

3. See *United States v. Salazar*, 958 F.2d 1285, 1290–91 (5th Cir.1992).

4. See *United States v. Gonzales*, 79 F.3d 413, 423 (5th Cir.1996).

5. See *United States v. Cardenas Alvarado*, 806 F.2d 566, 569–70 (5th Cir.1986).

6. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), *superceded on other grounds by* Fed.R.Evid. 104(a); *United States v. Duncan*, 919 F.2d 981, 991 (5th Cir.1990).

7. See *United States v. Carrasco*, 830 F.2d 41, 44 (5th Cir.1987).

8. *Blumenthal v. United States*, 332 U.S. 539, 557, 68 S.Ct. 248, 92 L.Ed. 154 (1947).

9. *United States v. Weiner*, 3 F.3d 17, 21 (1st Cir.1993) (citation omitted).

10. See *United States v. Maseratti*, 1 F.3d 330, 336 (5th Cir.1993).

### 3. Discussion

 When the evidence heard by this jury is viewed in the light most favorable to the verdict, it is enough to support the conclusion that King entered into an agreement, either tacitly or expressly, to distribute meth. Together, King's statements to Agent Gregory[12] and Majure's testimony[13] at trial provided the jury with evidence that (1) Majure sold up to two ounces of meth to King on a "fronting" basis numerous times for as long as four years, (2) Majure spoke with King at least ten times between October 2007 until January 2008, (3) Majure knew that King was dealing drugs downstream, (4) witnesses saw King possess and distribute meth, and (5) King identified the recipients of many of her meth sales.

Although there is no direct evidence of a conspiratorial agreement, the confluence of this evidence is sufficient to entitle the jury to conclude that there was an agreement between King and the larger conspiracy. Especially probative of the existence of a conspiratorial agreement is the "fronting" arrangement engaged in by Majure and King, which indicates trust and a mutually dependent relationship.[14] The fact that King may not have known all intricacies of the conspiracy is immaterial; she need only have known of the conspiracy's general purpose and scope[15]—in this case, distribution of meth in Northern Mississippi. Viewing all of this evidence and the inferences to be drawn therefrom in the light most favorable to the verdict, we conclude that the jury heard sufficient evidence on which to convict King.

### B. King's Constitutional Challenge

#### 1. Standard of Review

 In her one-paragraph argument on this claim, King asserts that she was unconstitutionally prohibited from using both Agent Gregory's report that he created for the issuance of a search warrant in the larger meth conspiracy and a composite 40–page report created by DEA Agent Arlis Swindoll. When a defendant objects to the limitation on confrontation in the district court, we review the purported Confrontation Clause[16] violation de novo.[17] Here, the defendants objected to the trial court's limitation on the use of Agent Swindoll's report, so we review that ruling de novo. The parties did not, however, object to any purported limitation on Agent Gregory's report, so we review any

11. *See United States v. Williams–Hendricks,* 805 F.2d 496, 503 (5th Cir.1986).

12. King contends that her statements to Agent Gregory are inadmissible hearsay. Not so: Her statements are admissible as admissions of a party-opponent under Federal Rule of Evidence 801(d)(2). *See, e.g., United States v. Coppola,* 788 F.2d 303, 306 (5th Cir.1986) (allowing for the admission of evidence of a statement of a party-opponent as recounted in an officer's testimony).

13. King insists that Majure's statements should not be admitted because they do not fit into the hearsay exception embodied in Federal Rule of Evidence 801(d)(2)(E). Because this evidence is not hearsay, however, there is no reason to look to this hearsay exception. The testimony was properly admitted.

14. *See United States v. Self,* 414 Fed.Appx. 611, 613 (5th Cir.2011) (unpublished); *United States v. Bender,* 539 F.3d 449, 454 (7th Cir. 2008).

15. *See United States v. Thomas,* 12 F.3d 1350, 1357 (5th Cir.1994).

16. King cites to cases dealing with *Brady* violations, but it is clear she is raising a Confrontation Clause challenge.

17. *See United States v. Acosta,* 475 F.3d 677, 680 (5th Cir.2007).

ruling related to that report for plain error.[18]

### 2. Discussion

■ Use of Agent Gregory's report was not limited, and the parties at trial questioned Agent Gregory on his report at length. Therefore, King has not shown error—let alone plain error—regarding the report created by Agent Gregory. The district court did, however, limit King's use of Agent Swindoll's report in her cross-examination of Agent Gregory because the court was concerned that there was not a proper foundation that Agent Gregory knew of, used, or incorporated Agent Swindoll's report. King has not offered any explanation on appeal, however, as to why this limitation by the district court was improper. King has thus waived any challenge she might have had by failing to brief this issue adequately.

### C. Whittle's Confrontation Clause Challenge

#### 1. Standard of Review

As stated above, a Confrontation Clause challenge is reviewed *de novo* if made in the district court and for plain error if it was not challenged in the district court. It is unclear whether Whittle objected on this ground at an appropriate time,[19] but, because Whittle's challenge fails under either *de novo* or plain-error review, we shall assume that our standard of review is *de novo*.

### 2. Applicable Law

The Confrontation Clause of the Sixth Amendment ensures that an accused has the right to "be confronted with the witnesses against him." This right does not, however, require the district court to allow wholly unfettered cross-examination.[20] A district court is afforded "wide latitude" to impose reasonable limits on cross-examination "based on concerns about, among other things, harassment, prejudice, [or] confusion of the issues...."[21] "[T]he *Confrontation Clause* guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."[22]

### 3. Discussion

■ Whittle asserts that the January 2009 report contains a prior inconsistent statement with which he should have been permitted to confront Majure. That report, written by Agent Gregory, recounts that Majure stated that he sold meth to Whittle a "couple" of times. Whittle argues that, because "couple" literally means "two," Majure's statement in the January 2009 interview is inconsistent with his testimony at trial that he sold meth to Whittle on four occasions. Such a distinction could be important because the government must show that Whittle conspired to possess at least 50 grams of meth, and

18. *Id.*

19. The only citation to the record of an objection on this ground—and the only objection we could find on our own review—demonstrates an objection that was made in Whittle's motion for acquittal. "The only proper basis for a motion for judgment of acquittal is a challenge to the sufficiency of the government's evidence." *United States v. Hope,* 487 F.3d 224, 227 (5th Cir.2007) (brackets and citation omitted). Whittle was not permitted to make an evidentiary challenge in a motion for acquittal.

20. *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

21. *Id.*

22. *Id.* (emphasis in original).

proof of only two sales of one-half ounce of meth each would not satisfy this burden.[23]

The government asserts that there was no limitation on questioning or use of the Gregory report. The government is correct that at trial the parties addressed the report and the interview with Agent Gregory and discussed the interview with Majure. But the government cites to no instance when a party was permitted to use a report of an interview to confront a witness with his or her allegedly inconsistent statement. This is the prohibition about which Whittle complains, *i.e.*, his inability to *impeach* Majure.

Indeed, the record indicates that the defense lawyers did not believe that they could use this evidence. Whittle's attorney stated that the district court had already told the parties that they could not use this evidence, and the district court appears to agree that it had imposed such limitation. It stated that "the issue that defense counsel was precluded from using an officer's report to cross-examine a witness that did not author or accept or acquiesce in that report. I stand by that ruling." Despite this language, Whittle does not indicate where in the record the district court's imposition of such a limitation can be found.

But even assuming that this limitation was imposed, Whittle has not shown that it was improper. The report is hearsay as to Majure's statements, and the only hearsay exception that could possibly be at issue is the one for impeachment purposes.[24] Whittle has not adequately shown that the district court acted outside of the "wide latitude" it is afforded in limiting the use of Agent Gregory's summary report of the interview.

The evidence that Whittle wishes to introduce is unreliable. The report did not purport to be a verbatim account of Majure's statements; it comprised only the thoughts and recollections of Agent Gregory, and there is no evidence that Majure ever saw the report or adopted it. It is "grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations."[25]

Furthermore, Whittle's narrow focus on the word "couple" is unavailing. Although in its dictionary sense, "couple" means "two," it is broadly used colloquially in reference to a small but inexact number. It is entirely unclear whether Agent Gregory asked Majure precisely how many times he sold meth to Whittle or whether Agent Gregory remembered Whittle's answer if he actually asked him exactly how many sales he had made. It is thus unreasonable to assume that Agent Gregory's use of the word "couple" means that Agent Gregory remembered that Majure had stated that he sold to Whittle on two, and only two, occasions.

Thus, the district court was within its discretion in limiting the use of this unreliably imprecise piece of evidence in cross-examination, and Whittle advances no argument why the district court's limitation is unjustified. Indeed, Whittle had other avenues available to elicit the same information. For example, he could have cross-examined Agent Gregory and forced him to state specifically on the record precisely

---

**23.** There are approximately 28.35 grams in one ounce.

**24.** *See United States v. Palacios*, 556 F.2d 1359, 1363–64 (5th Cir.1977).

**25.** *United States v. Judon*, 581 F.2d 553, 554 (5th Cir.1978).

how many times Majure told him that he sold meth to Whittle. Although this testimony would be hearsay, it could have contained sufficient reliability to be admissible as impeachment evidence only. In fact, at least one other defense attorney planned to do just that, stating that he would attempt to get around the prohibition on the use of the report as impeachment evidence by calling the agent who conducted the interview. Whittle did not pursue this strategy, and it does not appear that the district court would have limited this line of questioning.

### D. Whittle's *Brady* Violation Challenge

Whittle asserts that the government committed a *Brady* violation when it failed to produce the DEA agent who wrote the report of the January 2009 interview with Majure. To state a violation of *Brady*, a defendant must demonstrate that (1) the evidence at issue was favorable to the defense, (2) the government suppressed that evidence, and (3) the evidence would have been material to either guilt or punishment.[26] Whittle has provided no evidence that anyone other than Agent Gregory wrote the report. Because the report was produced by the government and Agent Gregory was featured prominently at trial, there is no indication that any evidence was suppressed. It follows that there could not have been any *Brady* violation. Regardless, Whittle did not object to a purported *Brady* violation in the district court, so he waived that claim.[27]

### III. Conclusion

The evidence at trial was sufficient to entitle the jury to convict King, and her trial comported with the Constitution. Whittle has failed to show a violation of either the Confrontation Clause or *Brady*. The defendants' convictions are AFFIRMED.

---

26. *Wilson v. Whitley,* 28 F.3d 433, 435 (5th Cir.1994).

27. *See United States v. Rice,* 607 F.3d 133, 142 (5th Cir.2010) (declining to hear a *Brady* claim because the defendant did not properly raise the issue in the district court).