# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-30527

United States Court of Appeals
Fifth Circuit

**FILED**
July 23, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

KAVIS J. OCTAVE, also known as, Kavis Octave; TONTA J. OCTAVE, also known as, Tonte Octave,

Defendants - Appellants

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:12-CR-205-2

Before JOLLY, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:*

After a jury trial, Kavis Octave was convicted on one count of conspiracy to distribute cocaine base and on three counts of distribution of cocaine base. Tonta Octave, Kavis's brother, was also convicted of conspiracy to distribute and on one count of distribution of cocaine base. On appeal, the Octaves contend that their Sixth Amendment right to confront witnesses against them was violated by the admission of statements of the Government's then-

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-30527

deceased confidential informant. Tonta alleges error in the admission at trial of his prior conviction under Federal Rule of Evidence 404(b). Both Tonta and Kavis appeal the denial of their motions for acquittal, arguing the evidence was insufficient to establish they conspired to distribute cocaine base. Tonta also challenges the sufficiency of the evidence for his conviction on the single count of distribution. We AFFIRM the convictions.

## FACTUAL & PROCEDURAL BACKGROUND

In early 2012, the Drug Enforcement Agency ("DEA") began the use of a confidential informant, Aaron Jones, to conduct controlled purchases of narcotics from suspected drug dealers in the St. James Parish, Louisiana area. Relevant here, Jones was used in a series of controlled purchases of cocaine base, or crack, from Kavis Octave. Immediately before every controlled purchase, DEA Special Agent Johnson searched Jones and his vehicle for contraband. Johnson then secured on Jones a hidden audio-video recording device and provided him with government money to make the purchase. Johnson and a team of local officers conducted surveillance of the controlled purchases. Johnson met with Jones immediately after each purchase to receive the contraband and recording device.

The first transaction occurred on March 9, 2012. Jones had been instructed to coordinate with Kavis Octave for a time and place to purchase one ounce of crack. The video recording from the March 9 transaction does not show Kavis's face, but the voice from the audio recording was identified at trial as being Kavis's. The second controlled purchase took place on March 21; Jones was again instructed to purchase one ounce of crack from Kavis. The video recording taken from this controlled purchase does show Kavis's face. The third controlled purchase took place on March 29. This time Jones was instructed to purchase two ounces of crack from Kavis. When Jones drove to the appointed place to purchase the crack from Kavis, however, Tonta arrived

2

and directed Jones to follow him to a nearby bar. Jones followed Tonta to the bar. The video recording shows Jones following Tonta into the bathroom of the bar. From the audio-video recording footage the jury could see Tonta's face and hear Tonta stating, "that's the two." No actual exchange of drugs can be seen on the video, but the DEA retrieved two ounces of crack from Jones immediately following the interaction at the bar.

Shortly after the third purchase, the DEA became concerned that its investigation may have been compromised. The DEA suspended the investigation and used Jones for controlled purchases from another individual, Quinton Dumas. The DEA's investigation of Dumas later led to Dumas's guilty plea in United States District Court. Dumas then testified at the trial of Tonta and Kavis. Jones was instructed to purchase crack from Dumas on two separate occasions. Dumas testified at the Octaves' trial that for his second sale of crack to Jones, he had first purchased the drugs from Tonta.

At some point, the DEA resumed its investigation of the Octaves. Jones made a fourth controlled purchase. Jones arranged with Kavis to buy two ounces of crack. As Jones drove to meet Kavis at the arranged location, local law enforcement spotted Tonta driving a black BMW in the area, conducting what appeared to be counter-surveillance maneuvers. During this purchase, the audio-video surveillance device Jones wore malfunctioned, leaving no audio or video of the transaction. Jones returned to DEA Agent Johnson after the transaction with two ounces of crack. The DEA had instructed Jones to set up another purchase from Kavis approximately a week later. The transaction was to take place on May 11, but early that morning, Jones died.

As a result of Jones' death, the DEA ended its investigation and obtained a series of search and arrest warrants, including arrest warrants for Dumas, Kavis, and Tonta Octave. Tonta Octave's arrest took place when the DEA executed a search warrant at his residence. When they arrived, Tonta was

attempting to leave in his black BMW with a bag of cash covered in ice from having been in his freezer.  He was arrested in his driveway.  Kavis and Dumas were also arrested within two days of Jones' death.

A grand jury returned a final, third superseding indictment against Kavis and Tonta on September 28, 2012.  Count 1 charged both Kavis and Tonta with conspiracy to distribute and to possess with the intent to distribute 28 grams or more of crack in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B)(iii) and 21 U.S.C. § 846.  Counts 2 and 3 charged Kavis only with distribution of a quantity of crack in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C) for the first and second controlled purchases occurring on March 9 and March 21, 2012.  Counts 4 and 5 charged both Kavis and Tonta with distributing 28 or more grams of crack in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B)(iii) and 18 U.S.C. § 2 for the third and fourth controlled purchases occurring on March 29, 2012 and May 3, 2012, respectively.

Prior to trial, Kavis filed a motion in limine seeking to prevent the Government from introducing at trial any statements of the then-deceased Jones.  Kavis asserted that admitting the statements would violate his Sixth Amendment right to confront the witnesses against him.  The district court denied the motion, holding that the admissibility of any statement made by Jones would be determined at trial.  Also prior to trial, the Government filed a notice of intent to use evidence, pursuant to Federal Rule of Evidence 404(b), of Tonta Octave's conviction in 2002 in St. James Parish for distribution of crack.  Tonta filed a motion to exclude the prior conviction; the district court held that the evidence would be admissible.

At trial, DEA Special Agent Johnson testified about the investigation of the Octaves and the use of Jones for the controlled purchases.  He described exactly how the controlled transactions transpired and his role in supervising Jones.  During Johnson's testimony, the Government entered into evidence

No. 13-30527

CDs and transcripts of the audio-video surveillance of the controlled purchases. Quinton Dumas testified about his interactions with the Octaves. In particular, Dumas testified that while incarcerated in the same jail with Kavis and Tonta, Dumas asked Kavis if he had sold crack to Jones. Kavis answered "no." Dumas later asked Tonta the same question, but before Tonta answered, Kavis shook his head back and forth as a sign for Tonta to say "no." Tonta ignored the signal and answered "yeah" to Dumas's question. Several days later, all three individuals were transferred to another facility. While there, Dumas was on the phone and started crying. Tonta saw this and said, "Man up . . . be quiet and we'll walk. A dead man can't talk."

At the close of the Government's case, the defense moved for acquittal. The district court reserved decision. Neither defendant testified nor offered any evidence. The jury convicted Kavis and Tonta of the conspiracy charge in Count 1. Kavis Octave was convicted on Counts 2-4 for distribution of crack. Tonta was convicted on a single distribution charge, Count 4, for the transaction taking place at the bar. The jury found both Kavis and Tonta not guilty of the final distribution charge in Count 5 for the controlled purchase in which the audio-video surveillance device malfunctioned.

Kavis and Tonta filed timely notices of appeal, challenging the denial of their motions for acquittal and alleging violations of the Confrontation Clause. Tonta also alleges error in the admission under Federal Rule of Evidence 404(b) of his prior conviction for distribution of crack.

DISCUSSION

*I.    Confrontation Clause*

"We review, for plain error only, any Confrontation Clause issues that were not contemporaneously raised at trial." *United States v. Acosta*, 475 F.3d 677, 680 (5th Cir. 2007). "Confrontation Clause objections that were properly raised at trial are reviewed *de novo*, subject to harmless error analysis." *Id.*

No. 13-30527

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Supreme Court has explained that the clause bars the admission of "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had [] a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). The court defined "testimony" as "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* at 51 (alteration in original). If a statement's "primary purpose . . . is to establish or prove past events potentially relevant to later criminal prosecution," the statement is testimonial. *United States v. Duron-Caldera*, 737 F.3d 988, 992-93 (5th Cir. 2013). The Government bears the burden of defeating a Confrontation Clause objection by establishing the evidence is non-testimonial. *Id.* at 993.

We consider two different alleged violations of the Confrontation Clause. Both dealt with the admission of certain statements made by Jones. The first is the admission of Jones' statements on the audio recording device which Jones wore during the controlled purchases. The defendants' side of the recorded conversations with Jones were admitted as an admission by party opponent under Federal Rule of Evidence 801(d)(2)(A). The statements of Jones were admitted, allegedly not for their truth but for the limited purpose of providing context for the defendants' statements. The judge provided a limiting instruction to the jury. Counsel for the Octaves did not object at trial to the admission of the recorded conversations between the defendants and Jones. That makes our review only for plain error. *See Acosta*, 475 F.3d at 680-81.

We have previously held that the admission of an unavailable informant's recorded conversations with defendants did not offend the Sixth

6

Amendment if the informant's "statements were part of a reciprocal and integrated conversation the agent had with the defendant" and the jury was instructed "to consider the statements of [the informant] only to provide a context for the statements of the defendant and not for the truth of the matters [he] asserted." *United States v. Cheramie*, 51 F.3d 538, 541 (5th Cir. 1995). We have since relied on *Cheramie* to reaffirm the proposition that statements of an informant in a recorded conversation with the defendants may be admitted for the limited purpose of providing context. *See United States v. Rios*, 298 F. App'x 312, 313-14 (5th Cir. 2008). Here, the Government redacted the recordings at issue to admit only the statements by Jones necessary for providing context to the defendants' own statements in the recorded conversations. Moreover, the court provided the jury with a limiting instruction that Jones' statements were not being offered for their truth. The defendants point to no particular statements that Jones made that may have been unduly prejudicial and not simply providing context. We find no plain error as to the introduction of Jones' recorded comments.

The second basis for the defendants' Confrontation Clause arguments is the testimony of DEA Agent Johnson and his reference to statements Jones made to him in the course of this investigation. In its response to the motion in limine to exclude the use of any statements of Jones, the Government conceded that admission of Jones' statements to law enforcement, if incriminating, would violate the defendants' right to confront Jones. Nevertheless, during the cross-examination of Agent Johnson, Johnson was asked why he did not conduct fingerprint and DNA analysis on the drugs he received from Jones after the controlled purchases to establish they came from the defendants. Johnson responded that he did not think it was necessary because he knew where the drugs came from. On redirect examination, the Government asked Agent Johnson to clarify why he believed it was not

necessary to conduct the DNA testing on the drugs.  Agent Johnson responded, "I was sure of where the drugs came from based in part on my conversations I had with" Jones.  The Octaves did not object to this testimony at trial, and thus we review for plain error.  *Acosta*, 475 F.3d at 681.

The Government contends that the testimony was elicited for the non-hearsay purpose of explaining why Johnson did not order DNA testing on the drugs, and that defense counsel opened the door for the testimony by cross-examining Johnson on the matter and attacking Johnson's investigation.  We conclude that this testimony did not violate the defendants' Sixth Amendment right to confront.  The Confrontation Clause "has no application to out-of-court statements that are not offered to prove the truth of the matter asserted." *Williams v. Illinois*, 132 S. Ct. 2221, 2228 (2012).  The testimony here was only elicited on redirect examination after Johnson's investigation had been attacked and for the limited purpose of showing why Johnson conducted his investigation in a certain manner.  No more information was given than was necessary for the purpose of showing why Johnson took the actions he did in the course of his investigation.  *See Gochicoa v. Johnson*, 118 F.3d 440, 445-46 (5th Cir. 1997).  Evidence is only testimonial in nature if it is a declaration made for the purpose of establishing a fact.  *Crawford*, 541 U.S. at 51.  Contrary to the defendants' assertions, the statement that Johnson did not conduct DNA testing based on conversations with Jones was not being offered for the purpose of establishing the fact that the drugs came from the defendants.  No violation of the Confrontation Clause occurred.

II.    *Tonta Octave's prior conviction*

"This court reviews the admission of evidence under Rule 404(b) for abuse of discretion." *United States v. Cockrell*, 587 F.3d 674, 678 (5th Cir. 2009).  Our review is heightened in criminal cases, but abuse of discretion is only reversible if a defendant can demonstrate prejudice.  *Id.*

Rule 404(b) provides in relevant part:

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. . . . This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

FED. R. EVID. 404(b)(1), (2). This circuit applies a two-step analysis for the admissibility of evidence under Rule 404(b). *See United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978). "First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character." *Id.* "Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of [R]ule 403." *Id.*

The Government introduced in evidence of Tonta's conviction in 2002 on four counts of distribution of crack. The district court allowed the evidence, concluding that because the prior conviction involved the same drug Tonta was now charged with conspiracy to distribute, the prior conviction was relevant for the purpose of proving knowledge, state of mind, and intent. The court then determined the probative value of the evidence outweighed the danger of unfair prejudice. The jury was given a limiting instruction that the evidence was not to be considered in deciding whether Tonta committed the acts charged in the current matter, but only for the limited purpose of determining whether Tonta had the state of mind or intent necessary to commit the crime charged. Tonta challenges the court's admission of the evidence, arguing the prior conviction served as the only substantive evidence supporting his convictions for both conspiracy and distribution of crack.

Tonta pled not guilty to the conspiracy charge. His defense was primarily that the Government lacked any evidence of his involvement beyond

his mere presence at the bar and driving around the location where Kavis met Jones for the controlled purchases.  Tonta's plea and defense placed in issue his knowledge and intent to conspire to distribute crack.  *See United States v. Gadison*, 8 F.3d 186, 192 (5th Cir. 1993).  "The mere entry of a not guilty plea in a conspiracy case raises the issue of intent sufficiently to justify the admissibility of extrinsic offense evidence." *Cockrell*, 587 F.3d at 679.  The first *Beechum* factor is thus satisfied because the evidence is relevant for the non-character purpose of proving Tonta's knowledge and intent to conspire to distribute crack.

In consideration of the second *Beechum* factor, Rule 403 requires exclusion only if the trial judge "believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence." *Beechum*, 582 F.2d at 915 n.20.  This court has repeatedly concluded that the probative value of prior drug convictions is not substantially outweighed by unfair prejudice. *Cockrell*, 587 F.3d at 680 (collecting cases).  The district court did not abuse its discretion in admitting the evidence of Tonta's prior conviction for the limited, non-character purpose of demonstrating Tonta's knowledge or intent to conspire to distribute crack.  *Id.*

III.    *Sufficiency of the evidence*

"We review a district court's denial of a motion for judgment of acquittal de novo." *United States v. Girod*, 646 F.3d 304, 313 (5th Cir. 2011); FED. R. CRIM. P. 29(a).  "The jury's verdict will be affirmed if a reasonable trier of fact could conclude from the evidence that the elements of the offense were established beyond a reasonable doubt." *Girod*, 646 F.3d at 313 (quotation marks omitted).  "In assessing the sufficiency of the evidence, we do not evaluate the weight of the evidence or the credibility of the witnesses, but view

the evidence in the light most favorable to the verdict, drawing all reasonable inferences to support the verdict." *Id.*

A. *Conspiracy to distribute crack — Tonta & Kavis, Count 1*

"To establish a conspiracy, the government must prove that: (1) an agreement existed between two or more persons to violate federal narcotics law, (2) the defendant knew of the existence of the agreement, and (3) the defendant voluntarily participated in the conspiracy." *United States v. Ochoa*, 667 F.3d 643, 648 (5th Cir. 2012). "The jury may infer any element of this offense from circumstantial evidence." *United States v. Lechuga*, 888 F.2d 1472, 1476 (5th Cir. 1989). "For example, an agreement may be inferred from concert of action, voluntary participation may be inferred from a collocation of circumstances, and knowledge may be inferred from surrounding circumstances." *Id.* at 1476-77 (quotation marks omitted).

Tonta urges that mere presence is not enough to convict him of conspiracy and that the Government proved, at most, that he sold crack to Jones on one occasion and that he knew Kavis — not that they participated in any conspiracy. Kavis likewise argues that presence is not enough to show an agreement and that the Government's only evidence was several interactions between the brothers that do not demonstrate any conspiracy to distribute narcotics.

The totality of the evidence at trial was sufficient for a reasonable trier of fact to conclude Tonta and Kavis conspired to distribute crack. This evidence included the following: (1) Tonta arrived at the time and place of the third scheduled purchase when Jones had arranged to buy crack from Kavis, not Tonta; (2) audio of the third transaction revealed Jones telling Tonta that he thought "V" — Kavis's nickname — was supposed to be meeting him; (3) Jones followed Tonta to a bar where he purchased two ounces of crack, the amount Jones had pre-arranged with Kavis to purchase; (4) officers testified Tonta was

seen driving around conducting counter-surveillance maneuvers at the scene of the fourth scheduled purchase between Jones and Kavis; and (5) Dumas's testimony of the jailhouse conversation where Kavis signaled Tonta to deny having sold crack to Jones.  Taken together and viewed in the light most favorable to the verdict, the totality of the evidence was sufficient for a rational juror to conclude Tonta and Kavis conspired to distribute crack.  *See id.*

### B. Distribution of crack — Tonta, Count 4

In order to prove the distribution charge, there must be evidence Tonta "(1) knowingly (2) distributed (3) the controlled substance."  *United States v. Sotelo*, 97 F.3d 782, 789 (5th Cir. 1996).  Tonta was convicted of distribution of crack based on the third controlled purchase where Tonta, instead of Kavis, met Jones at the arranged location for the transaction and directed Jones to follow him to a bar and into the bathroom.  Tonta argues the Government presented no evidence he was in possession of narcotics or that an exchange of narcotics occurred between Tonta and Jones.  Because the audio-video recording did not show the actual exchange of drugs, Tonta argues Jones could have procured the drugs from anyone at the bar and that the Government did not put on any evidence the drugs in fact were transferred to Jones from Tonta.

At trial, the Government played the audio-video recording made during the third controlled purchase.  The jury saw Tonta direct Jones to a bar after meeting Jones at the location where Kavis was to have sold two ounces of crack to Jones.  The video shows Jones and Kavis entering the bathroom of the bar and Tonta is heard saying, "that's the two."  Special Agent Johnson immediately recovered two ounces of crack from Jones' vehicle after Jones left the bar.  The jury heard extensive testimony detailing the care the DEA took in monitoring Jones and searching his person and vehicle for any contraband prior to the controlled purchases. While it may be conceivable that Jones could have gotten the crack from another individual in the bar, "the jury is free to

choose among reasonable constructions of the evidence." *United States v. Mudekunye*, 646 F.3d 281, 285 (5th Cir. 2011) (quotation marks omitted). The evidence was sufficient for a rational juror to infer that Tonta distributed crack to Jones at the bar during the third controlled purchase.

The convictions are AFFIRMED.